RON BENDER (State Bar No. 143364)
TODD M. ARNOLD (State Bar No. 221868)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234 / Facsimile: (310) 229-1244
Email: rb@lnbyg.com; tma@lnbyg.com

Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>GUARACHI WINE PARTNERS INC.,<br>a California corporation,<br><br>    Debtor and Debtor in Possession. | Case No.: 1:22-bk-10545-VK<br><br>Chapter 11 Case<br><br>Subchapter V<br><br>**DEBTOR'S MOTION FOR AN ORDER:**<br>**(1) APPROVING SALE OF CERTAIN ESTATE**<br>**ASSETS FREE AND CLEAR OF ALL LIENS,**<br>**CLAIMS, ENCUMBRANCES AND INTERESTS;**<br>**(2) APPROVING THE _STIPULATION_**<br>**_PROVIDING FOR PAYMENT IN FULL OF_**<br>**_OUTSTANDING SECURED DEBT OWING TO_**<br>**_CITY NATIONAL BANK, N.A._;**<br>**(3) WAIVING THE 14-DAY STAY PERIOD OF**<br>**BANKRUPTCY RULE 6004(h); AND**<br>**(4) GRANTING RELATED RELIEF;**<br>**MEMORANDUM OF POINTS AND**<br>**AUTHORITIES AND DECLARATIONS IN**<br>**SUPPORT THEREOF**<br><br>**Hearing:**<br>  Date:    October 13, 2022<br>  Time:    2:00 p.m.<br>  Place:   Courtroom 301<br>             21041 Burbank Boulevard<br>             Woodland Hills, CA 91367<br>             **VIA ZOOMGOV** |

Guarachi Wine Partners Inc., the Chapter 11 debtor and debtor in possession herein (the "Debtor"), herby moves the Court, by way of this motion (the "Sale Motion"), for the entry of an order (the "Sale Order"):

(1)    pursuant to 11 U.S.C. §§ 363(b) and (f), approving the sale of the Debtor's remaining wine inventory (the "Inventory") and remaining wine brands and related intellectual property (the "Brands" and, together with the Inventory, the "Assets"), which are further described below, free and clear of any and all liens, claims, encumbrances and interests, to Titan Wine & Spirits, LLC ("Titan")[1] for a purchase price of $430,080.00 (the "Purchase Price");

(2)    pursuant to 11 U.S.C. § 363(m), finding that Titan is a "good faith" purchaser entitled to the protections afforded under 11 U.S.C. § 363(m);

(3)    pursuant to the motion (the "Bid Procedures Motion") [Dkt. 125] to approve bid procedures (the "Bid Procedures"), which was granted pursuant to an order of the Court entered on August 22, 2022 (the "Bid Procedures Order") [Dkt. 137], authorizing Sherwood Partners, Inc. ("Sherwood"), the Debtor's Court approved sales agent, to execute and deliver a Bill of Sale of the Assets to Titan;

(4)    authorizing the Debtor to execute such other documents and to take such actions necessary to complete the sale and transfer of the Assets to Titan;

(5)    approving the *Stipulation Providing For Payment In Full Of Outstanding Secured Debt Owing To City National Bank, N.A.* (the "CNB Stipulation") attached hereto as **Exhibit "A"** between the Debtor and City National Bank, N.A. ("CNB"), the Debtor's senior secured creditor, which provides for the payment of CNB's outstanding indebtedness in full;

(6)    pursuant to the application (the "Sherwood Employment Application") [Dkt. 123] to employ Sherwood as the Debtor's sales agent, which was approved pursuant to an order of the Court entered on August 22, 2022 (the "Sherwood Employment Order") [Dkt. 136], authorizing and directing the Debtor to pay Sherwood a Success Fee (as defined in the Sherwood

---

[1] As discussed below, Alejandro Guarachi, who is the President, Chief Executive Officer, and Chief Financial Officer of the Debtor, is also the Chief Executive Officer, and sole member and manager of Titan, a wine distributor.

Employment Application) in the amount of $38,707.20 (*i.e.*, 9% of the Purchase Price of $430,080.00 as specified in the Sherwood Employment Application and Sherwood Employment Order);

(7)      waiving the 14-day stay period set forth in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure to enable the sale of the Assets to close as quickly as possible; and

(8)      providing such other relief as is appropriate under the circumstances.

**WHEREFORE**, the Debtor respectfully requests that this Court enter a Sale Order granting the Sale Motion and providing the relief requested in paragraphs (1) through (8) of the foregoing Sale Motion.

Dated: October 10, 2022          GUARACHI WINE PARTNERS INC.,
                                 a California corporation,


                                 */s/ Ron Bender*
                                 RON BENDER
                                 TODD M. ARNOLD
                                 LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
                                 Counsel for Chapter 11 Debtor and Debtor in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES[2]

### I.

### STATEMENT OF FACTS

**A.    GENERAL BACKGROUND.**

On May 4, 2022 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.[3]  The Debtor elected Subchapter V on its bankruptcy petition and is a small business debtor as defined by Sections 101(51D) and 1182(1).

The United States Trustee (the "UST") appointed M. Douglas Flahaut to serve as the Subchapter V Trustee (the "Sub V Trustee") in this case pursuant to Section 1183(a).

The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession pursuant to Sections 1182(2) and 1184.

**B.    A DESCRIPTION OF THE DEBTOR AND ITS BUSINESS.**

The Debtor was founded by Alejandro Guarachi ("Mr. Guarachi"), has been in business since 1985, and was formally incorporated in January 1988.  Mr. Guarachi is the Debtor's sole shareholder and its President, Chief Executive Officer, and Chief Financial Officer.  When Mr. Guarachi came to the United States from Chile in 1985 on a soccer scholarship, an injury shattered his athletic dreams.  Rather than wallow in his misfortune, he saw an opportunity to go back to his roots and pursue his other passion – wine.

While living in the heart of California wine country, Mr. Guarachi saw that wine from South America was virtually unknown and not readily available.  Mr. Guarachi jumped at the opportunity to fill the gap and educate the American consumer on the amazing wines of his home country.  Out of his garage, Mr. Guarachi was salesman, warehouse manager, marketer, and truck driver rolled into one. Years later, he built his company into a leading importer, marketer and

---

[2] Unless otherwise stated, capitalized terms in this Memorandum have the same meanings ascribed to them in the preceding Sale Motion.

[3] Unless otherwise stated, all Section references herein are to title 11 of the United States Code, §§ 101, et seq.

producer of fine wines.  In connection with the production of its own wines, the Debtor does not own vineyards, but instead purchases grapes and juice from other producers and utilizes third-party vintners to make and bottle its wines.

Through the years, the Debtor has achieved numerous accolades including Wine Enthusiast Wine Star Awards, Wine Spectator Top 100s and an Impact "Hot Brand" award.  The Debtor is now the number one importer of South American wines above $10 in the U.S., represents brands from around the world, and has seen success developing its own innovative brands.  The Debtor distributes wine in over 20 states.  Because of Mr. Guarachi's vision in 1985, U.S. wine consumers can now savor a glass of Argentine Malbec or Chilean Carménère, that were once unheard of north of the equator, as well as California Pinot Noir, Chardonnay, red blends, Cabernet Sauvignon, and more. The Debtor built its reputation as the pioneer of South American wines and developed its own brands.[4]

In furtherance of that end, in September 2018, the Debtor entered into an Asset Purchase Agreement (the "APA") with Parker Station, Inc. ("PSI") whereby the Debtor purchased the "Parker Station" brand and related goodwill, intellectual property, and other assets (collectively, the "PSI Assets").  In connection with the APA, the Debtor also entered into a Wine Production Agreement (the "Parker Production Agreement") with PSI whereby PSI agreed to produce the products sold by the Debtor under the Brand and the Debtor agreed to purchase at least 25,000 9 liter cases of such product from PSI on an annual basis (the "Post-Closing Inventory").  The Debtor's obligations under the APA and Parker Production Agreement were secured by a lien on the PSI Assets and Post-Closing Inventory.

In addition to his ownership and positions with the Debtor, Mr. Guarachi is also the Chief Executive Officer, and sole member and manager of Titan, a wine distributor.

---

[4] Additional information about the Debtor can be found at its website: http://www.guarachiwinepartners.com/.

**C.      A DESCRIPTION OF THE DEBTOR'S ASSETS, CLAIMS AGAINST THE DEBTOR, AND STIPULATIONS RESOLVING THE TWO SECURED CLAIMS ASSERTED AGAINST THE DEBTOR.**

The Debtor's primary assets include, but are not limited to, the following: (1) cash in the approximate amount of $944,000, which includes cash on hand in the current approximate amount of $750,000 plus $194,000 being held by Levene, Neale, Bender, & Golubchik L.L.P. ("LNBYG"), the Debtor's bankruptcy counsel, pursuant to the Kaiken Stipulation (as discussed and defined below), which will be transferred to the Debtor in the near future pursuant to the terms of the Kaiken Stipulation, (2) $90,000 being held by LNBYG pursuant to the Debtor's cash collateral motion and orders thereon [Dkts. 4, 29, 77, 142, and 145] as a reserve for the partial payment of bankruptcy related legal fees, (3) a substantial amount of accounts receivable ("AR"), and (4) the Debtor's current wine inventory (referred to herein as the "Inventory") and wine brands and related intellectual property (referred to herein as the "Brands" and, with the Inventory, the "Assets"), which the Debtor is seeking to sell to Titan for the Purchase Price of $430,080.00 pursuant to the Sale Motion.  Thus, once the sale is concluded the $194,000 Kaiken Stipulation settlement proceeds are turned over to the Debtor, the Debtor will have well in excess of $1 million of cash plus a large amount of remaining outstanding AR.  With minimal ongoing operating expenses, the Debtor expects its cash balance to continue to grow.

As set forth in the UCC-1 Financing Statements filed against the Debtor and attached to the UCC Report obtained by the Debtor (collectively, the "UCC Report"), a true and correct copy of which is attached hereto as **Exhibit "B,"** as of the Petition Date, the Debtor had two secured creditors: (1) CNB, the Debtor's pre-petition lender, which has a current outstanding secured claim in the approximate amount of $316,671.88 secured by a senior lien against all of the Debtor's assets and (2) PSI, which, as of the Petition Date, had a claim in the approximate amount of between $426,000 (as set forth in the Debtor's schedules) and $878,709.05 (as set forth in the four Proofs of Claim 21-23 filed by PSI) secured by the PSI Assets.

The Debtor and PSI recently entered into that certain *Stipulation Resolving Disputes Between Debtor And Parker Station, Inc*. ("PSI Stipulation").  The PSI Stipulation provides, inter alia, that (1) the Debtor would stop selling PSI inventory pending approval of the PSI Stipulation

and (2) upon approval of the PSI Stipulation, (a) PSI would take ownership of the remaining PSI Assets (*i.e.*, the PSI Inventory and PSI Brand) and (b) be deemed to have accepted the PSI Assets in full satisfaction of the claims asserted by PSI against the Debtor.  While not stated specifically in the PSI Stipulation, consummation of the PSI Stipulation, particularly the transfer of the PSI Assets to PSI, requires the release of CNB's senior lien on the PSI Assets.  On September 20, 2022, the Debtor filed a motion to approve the PSI Stipulation [Dkt. 152]; there were no objections to such motion and, therefore, the Debtor expects that the PSI Stipulation will be approved in advance of the hearing on this Sale Motion.

        In addition to the foregoing, the Debtor and CNB recently entered into or are expected to enter into imminently the CNB Stipulation attached hereto as **Exhibit "A."**  The CNB Stipulation provides that (1) within three business days following the entry of an order of the Court approving the CNB Stipulation, the Debtor shall pay the sum of $316,671.88 to CNB, which, provided such payment is made by no later than October 21, 2022, CNB acknowledges shall result in payment in full of the Debtor's outstanding indebtedness owing to CNB, which is accounted for in Exhibit "1" to the CNB Stipulation, and (2) within five business days following the Debtor's payment to CNB, CNB shall file a UCC-3 termination statement with the California Secretary of Statement terminating CNB's lien against the Debtor's assets.  The Debtor believes that approval of the CNB Stipulation is in the best interests of the estate because: (1) the Debtor agrees that it owes CNB $316,671.88 as accounted for in Exhibit "1" to the CNB Stipulation, (2) the Debtor has sufficient funds to pay the outstanding claim of CNB, (3) payment of such claim will stop the accrual of additional interest and fees on the CNB debt and, therefore, preserve estate assets available for distribution to other creditors, and (4) the required release of CNB's lien will facilitate consummation of the PSI Stipulation.

        In addition to the foregoing secured debt, which is/will be eliminated pursuant to the CNB Stipulation and PSI Stipulation, the Debtor has approximately $60,000 in alleged priority claims asserted by taxing authorities. *See* Proofs of Claim 10 and 35.  The Debtor also has a number of unsecured creditors with alleged claims totaling approximately $4.6 million.  The foregoing amount includes (1) the disputed, contingent, and unliquidated general unsecured claim asserted by

Bodega Norton, S.A. ("Bodega") in the approximate amount of $1.921 million, which claim is the subject of pending litigation (now stayed) initiated by Bodega against the Debtor, to which the Debtor has filed a counter-claim against Bodega in that litigation, (2) the contingent and unliquidated general unsecured claim asserted by the Small Business Administration in the approximate amount of $667,382 for a PPP loan, which loan the Debtor believes will be forgiven pursuant to PPP loan guidelines, which forgiveness process the Debtor has already started, and (3) certain other disputed, contingent, and unliquidated general unsecured claims.

D.    **THE REASONS FOR FILING BANKRUPTCY AND EXIT STRATEGY.**

Like many companies, the Debtor suffered a downturn in business due to the COVID-19 pandemic.  The Debtor's business was also affected by global supply chain issues, cost increases, and the aforementioned dispute with Bodega, the Debtor's primary supplier of Argentinian wines, which resulted in Bodega refusing to renew its agreement with the Debtor to be the exclusive importer of Bodega wines.  Due to the foregoing business issues and costs associated with litigating with Bodega and another primary wine supplier, the Debtor was unable to pay creditors as their debts became due.  With its cash balance down to a small number and in order to obtain a breathing spell from litigation and immediate demands for payment by creditors and suppliers, and to afford itself an opportunity for an improvement in demand for wine and potential cost reductions and a hopeful successful reorganization, the Debtor decided to file for Chapter 11 protection.

Before the Petition Date and soon thereafter, the Debtor was hopeful that as the COVID-19 related downturn in business and supply chain issues subsided, it would be able to rebuild its sales and business and emerge as a viable enterprise.  Unfortunately, due to (1) the inability to overcome the negative impacts resulting from the foregoing global issues and the filing of the Debtor's bankruptcy case, (2) the inability to stabilize relationships with vendors and customers after the Petition Date, and (3) resulting mounting operating losses, the Debtor, in an exercise of its business judgment, determined that it would be in the best interests of the estate and its creditors to sell the Assets (*i.e.*, the Inventory and the Brands), provided that the Assets offered for sale at the Auction would not include the Debtor's cash, AR, litigation claims, or other items not included in the definition of "Assets."

**E.**   **THE DEBTOR'S EMPLOYMENT OF SHERWOOD AS ITS SALES AGENT AND APPROVAL OF BID PROCEDURES FOR AN AUCTION OF THE ASSETS.**

In furtherance of its efforts to sell the Assets, on July 28, 2022, the Debtor filed the Sherwood Employment Application [Dkt. 123] seeking (1) to employ Sherwood as the Debtor's sales agent in connection with an auction of the Assets (the "Auction"), (2) to pay Sherwood a $35,000 Advisory Fee (as defined in the Sherwood Employment Application), which has been paid, and (3) to pay Sherwood a 9% Success Fee (as defined in the Sherwood Employment Application, *i.e.*, 9% of the total consideration received from the sale of the Assets to third-parties) upon closing pursuant to the terms set forth in the Sherwood Employment Application and the Engagement Letter Agreement between the Debtor and Sherwood attached to the Sherwood Employment Application as Exhibit "1," as modified by the terms set forth in the Sherwood Employment Application.  On August 22, 2022, the Court entered the Sherwood Employment Order [Dkt. 136] approving the Sherwood Employment Application, including the compensation set forth above.

Also on July 28, 2022, the Debtor filed its Bid Procedures Motion [Dkt. 125] to approve the Bid Procedures for an Auction of the Assets.  In the Bid Procedures Motion, the Debtor disclosed that "Alejandro Guarachi, the Debtor's owner, President, and CEO, may bid on certain Assets and has retained independent counsel in connection with any such bid."  Bid Procedures Motion, n.3 and 21:9-13.  On August 22, 2022, the Court entered the Bid Procedures Order [Dkt. 137] approving the Bid Procedures and authorizing Sherwood to execute and deliver a Bill of Sale of the Assets to the winning bidder(s) for the Assets.  The Bid Procedures were approved by the Court and sent to Potential Bidders.[5]  The Bid Procedures advised Potential Bidders that "[t]he Debtor's inventory has some turnover as wine is purchased and sold in the ordinary course of the Debtor's business. Therefore, the inventory list will be updated when the Bidding Procedures are sent out to prospective Bidders and as the inventory list is further updated, the most current version of the inventory list will be made available to prospective Bidders."  The Bid Procedures require that the sale of the Assets

---

[5] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures.

close by no later than October 17, 2022, unless the deadline is extended by mutual agreement of the Debtor and the buyer.

After the Bid Procedures were approved, the Court entered an order [Dkt. 148] granting the Debtor's motion to approve the Stipulation Resolving Disputes Between Debtor And Kaiken S.A. (the "Kaiken Stipulation") [Dkt. 134]. The Kaiken Stipulation provides, *inter alia*, for Kaiken to pay the Debtor $194,000 and to waive all claims against the Debtor in exchange for a transfer of ownership of the Debtor's Kaiken Inventory to Kaiken. Consistent with the foregoing, the Debtor removed the Kaiken Inventory from the list of Inventory available for purchase at the Auction. Further, based on the pending PSI Stipulation, the Debtor removed the PSI Inventory and PSI Brand from the Assets available for purchase at the Auction.

Leading up to the Auction, the Debtor continued to sell Inventory in the ordinary curse of business, because the Debtor, in an exercise of its business judgment and in consultation with and with the agreement of Sherwood, determined that the sale of Inventory in the ordinary course would result in higher sale prices than would likely be achieved via the Auction, which would serve the best interest of creditors.

**F.       THE MARKETING OF THE ASSETS AND THE AUCTION.**

Sherwood developed a target list of 90 Potential Bidders from Sherwood's database, research, and discussions with the Debtors management. Sherwood provided all of the Potential Bidders with information regarding the Auction, *i.e.*, an Executive Summary regarding the Assets for sale and the Bidding Procedures, which included a list of the Assets to be sold at the Auction, as amended based on the Kaiken Stipulation and PSI Stipulation. A summary of the outreach to Potential Bidders included the following key dates:

- Sales Process Launch Date: August 30, 2022,
- First Follow-up: September 1, 2022,
- Second Follow-up: September 7, 2022,
- Third Follow-up: September 12, 2022,
- Fourth Follow-up: September 19, 2022,
- Fifth Follow-up: September 26, 2022; and

- Overall: communicating with Potential Bidders.

Some of the key reasons for a number of bidders not bidding on the Assets included the following:

- "This category of wine is not a good fit and not aligned well with our business,"
- "The volume is too low,"
- "Outside our consumer health portfolio interests,"
- "They don't purchase out of bankruptcy situations or asset liquidations,"
- "Not in their core acquisition interests,"
- "Wine is of too low value for our customers," and
- "They don't see this as a high growth consumer brand."

Ultimately, Sherwood received three Qualified Bids from three Qualified Bidders, as follows:

| Bidder | Amount of Bid | Number of Cases | Assets |
|---|---|---|---|
| Grocery Outlet | $217,080.00 | 18,090 cases | Inventory only |
| Miller Family Wines ("Miller") | $187,945.00 | 16,580 cases | Inventory and Brands |
| Titan | $154,323.00 | 20,436 cases | Inventory and Brands |

Some of the difference in the case count of the Inventory resulted from an error in the function adding the total wine cases in Inventory.  Based on the foregoing, and because the highest bid did not include the Brands, in advance of the Auction, the Qualified Bidders were advised that (1) the winning bid at the Auction would be the highest Qualified Bid submitted at the Auction, regardless of which Assets the Qualified Bidder desires to include in its bid, (2) the winning Bidder would have the right up until the time of the sale closing to exclude any Assets that the winning Bidder elects not to take but the winning Bidder will not receive any "credit" or price reduction for leaving any wine Inventory or Brands behind, (3) if the winning Bidder announces at the conclusion of the Auction that there are certain Assets that the winning Bidder is not interested in acquiring, the other Bidders would be welcome to submit a bid following the conclusion of the Auction for some or all of those excluded Assets and any such bid would be considered for approval by Sherwood, and (4)

if the winning Bidder announces at a later date up until the time of the sale closing that there are certain Assets that the winning Bidder is not interested in acquiring, Sherwood will notify the other bidders of the availability of these excluded Assets and will provide the other Bidders with the opportunity to submit a bid at that time for some or all of those excluded Assets and any such bid will be considered for approval by Sherwood.

Pursuant to the Bid Procedures, the Auction commenced at 10:00 a.m. on October 6, 2022. All parties participated via Zoom as allowed by the Bid Procedures. Due to the fact that Titan is an insider of the Debtor, Titan participated in the Auction via Mr. Guarachi and independent counsel. Mr. Guarachi did not provide any input on the Debtor's side, and Sherwood with the assistance of LNBYG ran the Auction. The bids for the Assets at the Auction were as follows and, as noted below, resulted in Titan being the winning Bidder with a bid/Purchase Price of $430,080:

| 1 | Grocery Outlet | $217,080 | 13 | Miller | $350,000 |
|---|---|---|---|---|---|
| 2 | Miller | $222,080 | 14 | Titan | $355,000 |
| 3 | Titan | $227,080 | 15 | Miller | $375,000 |
| 4 | Grocery Outlet | Out | 16 | Titan | $380,000 |
| | Break-out for Miller and Grocery Outlet to discuss possible joint bid. | | 17 | Miller | $390,000 |
| 5 | Miller | $250,000 | 18 | Titan | $395,000 |
| 6 | Titan | $255,000 | | Break-outs for Miller and Titan. | |
| 7 | Miller | $275,000 | 19 | Miller | $400,000 |
| | Break-outs for Miller and Titan. | | 20 | Titan | $405,000 |
| 8 | Titan | $280,000 | 21 | Miller | $415,000 |
| 9 | Miller | $300,000 | 22 | Titan | $420,000 |
| 10 | Titan | $305,000 | 23 | Miller | $425,080 |
| 11 | Miller | $325,000 | **24** | **Titan – WINNING BID** | **$430,080** |
| 12 | Titan | $330,000 | 25 | Miller | Out |

At the conclusion of the Auction, Titan advised the other Qualified Bidders and Sherwood that it would likely be excluding certain Assets from its purchase. Titan has not yet specified the excluded Assets. Once Titan does so, Sherwood will offer the excluded Assets for sale

to the other Qualified Bidders and, if neither of them purchases the excluded Assets, the Debtor will seek to otherwise dispose of them.

Sherwood believes that the Auction was conducted in conformance with the Bid Procedures, without any collusion, and that the Auction yielded the highest possible price for the Assets under the circumstances, particularly given the foregoing active bidding among three Qualified Bidders.

## II.

## LEGAL ARGUMENT

### A.      THE COURT SHOULD APPROVE THE SALE OF THE ASSETS TO TITAN.

#### 1.      THE DEBTOR HAS OR WILL HAVE COMPLIED WITH ALL APPLICABLE NOTICE REQUIREMENTS.

Section 363(b)(1) provides that the Debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1). Section 102(1) defines "after notice and a hearing" as after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances.  11 U.S.C. § 102(1)(A).

FRBP 6004(a) provides, in pertinent part, that notice of a proposed sale not in the ordinary course of business must be given pursuant to  FRBP 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with Section 363(b)(2).    Fed.R.Bankr.P. 6004(a).    FRBP 2002(a)(2) requires at least 21 days' notice by mail of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortens the time or directs another method of giving notice.  Fed.R.Bankr.P. 2002(a)(2).  Here, pursuant to the Bid Procedures Order, the Court shortened the notice period, and the Debtor complied with the Bid Procedures by filing and serving the Notice of the Sale Motion and the Sale Motion on October 10, 2022, by 10:00 a.m. FRBP 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections.  It also provides that the notice of sale or property is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).  FRBP 2002(k) requires that the notice be given to the United States Trustee.  Fed.R.Bankr.P. 2002(k).

In addition, LBR 6004-1 requires that the notice contain the information specified in LBR 6004-1(c)(3) and that an additional copy of the notice be submitted to the Clerk of the Bankruptcy Court together with a Form F 6004-2.NOTICE.SALE at the time of filing for purposes of publication.  LBR 6004-1(c)(3) and (f).

The Debtor has or will have complied with all of the above provisions of the Bankruptcy Code, the FRBP and the LBR, as modified by the Bid Procedures Order.  The Debtor has complied with FRBP 6004(a) and 2002(a)(2), (c)(1), (i) and (k), as well as LBR 6004-1(c)(3), as far as practicable under the circumstances, because the Notice of the Sale Motion includes all of the required information set forth above, including, without limitation, the date, time and place of the hearing on the Sale Motion to approve the proposed sale of the Assets to Titan, the deadline for objecting to the Sale Motion, and related deadlines, and the Notice of the Sale Motion has been served on the Office of the United States Trustee, the Sub V Trustee, the Debtor, all of the Debtor's known creditors, all alleged secured creditors appearing on the Title Report, and all parties requesting special notice.  Further, this Sale Motion and its annexed Memorandum, Declarations, and Exhibits will be served on the Office of the United States Trustee, the Sub V Trustee, the Debtor, all alleged secured creditors appearing on the Title Report, and all parties requesting special notice. Additionally, the Notice of the Sale Motion advises parties in interest how and where to obtain a full copy of this Motion and its annexed Memorandum, Declarations, and Exhibits.

Further, as required by LBR 6004-1(f), concurrently with the filing hereof, the Debtor submitted an additional copy of the Notice of the Sale Motion, which includes required information about the proposed sale of the Assets, with the Clerk of the Bankruptcy Court together with a Form F 6004-2.NOTICE.SALE for purposes of publication.

Based on the foregoing, all applicable notice requirements have been satisfied.

1    **2.** **THE SALE OF THE ASSETS TO TITAN SHOULD BE APPROVED,**

2    **BECAUSE GOOD BUSINESS REASONS FOR THE SALE EXIST, THE**

3    **PURCHASE PRICE FOR THE ASSETS IS FAIR AND REASONABLE**
     **AND THE HIGHEST BID SUBMITTED AT THE AUCTION, AND THE**
     **PROPOSED SALE IS IN THE BEST INTERESTS OF THE ESTATE AND**

4    **ITS CREDITORS.**

5        As a general matter, a court considering a motion to approve a sale under Section 363(b)

6    should determine from the evidence presented before it that a "good business reason" exists to grant

7    such a motion. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). In addition, the court must

8    further find that the sale is in the best interest of the estate. To make this determination, the Court

9    should consider whether:

10       (1)    the sale is fair and reasonable, *i.e.*, the price to be paid is adequate;

11       (2)    the property has been given adequate marketing;
         (3)    the sale is in good faith, *i.e.*, there is an absence of any lucrative deals with

12              insiders, and
         (4)    adequate notice has been provided to creditors.

13

14   *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); *In re The Landing*,

15   156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); *In re Mama's Original Foods, Inc.,* 234 B.R. 500, 502-

16   505 (C.D. Cal. 1999). Here, the proposed sale of the Assets to Titan satisfies each of these

17   requirements.

18       **a.**    **Sound Business Purpose.**

19       The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*,

20   83 B.R. 14, 19 (B.A.P. 9th Cir. 1988) has adopted a flexible case-by-case test to determine whether

21   the business purpose for a proposed sale justifies disposition of property of the estate under Section

22   363(b). The facts pertaining to the sale at issue here amply substantiate the Debtor's business

23   decision that the contemplated sale of the Assets to Titan serves the best interests of the estate and

24   merits the approval of this Court.

25       The Debtor's sale of the Assets and conduct of the Auction was all designed to maximize

26   the recovery for the Debtor's creditors. After substantial marketing of the Assets and an Auction

27   conducted pursuant to the Bid Procedures that resulted in 24 rounds of bidding, the Purchase Price

28   offered by Titan is the highest and best offer received by the Debtor. Further, the Sale Motion,

1  including the requested approval of the CNB Stipulation, will result in the satisfaction of all secured

2  claims and eliminate ongoing operational losses and the further

3          Based on the foregoing, the proposed sale is in the best interests of the Debtor's estate

4  and its creditors and, therefore, represents a sound exercise of the Debtor's business judgment.

5                    **b.    Fair and Reasonable Price.**

6          In order for a sale to be approved under Section 363(b), the purchase price must be fair

7  and reasonable.  *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).  The

8  trustee is given substantial discretion in this regard.  *Id.*  In addition, Courts have broad discretion

9  with respect to matters under section 363(b).  *See Big Shanty Land Corp. v. Comer Properties, Inc.*,

10 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985).  In any sale of estate assets, the ultimate purpose is to

11 obtain the highest price for the property sold.  *Wilde Horse Enterprises, Inc.*, 136 B.R. at 841 (*citing*

12 *In re Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985)), *In re Alpha Industries, Inc.*, 84 B.R. 703, 705

13 (Bankr. Mont. 1988).

14         As noted above, Sherwood, the Debtor's sales agent, engaged in expansive marketing

15 efforts regarding the sale of the Assets.  Those efforts resulted in the current $430,080.00 offer for the

16 Assets, which will result in gross sale proceeds to the Debtor's estate of $391,372.80 after the

17 payment of Sherwood's Success Fee in the amount of $38,707.20 (*i.e.*, 9% of the Purchase Price of

18 $430,080.00 as specified in the Sherwood Employment Application and Sherwood Employment

19 Order).  As noted, Titan's offer was obtained at the conclusion of an Auction involving three

20 Qualified Bidders and 24 rounds of bidding conducted pursuant to the Bid Procedures approved by

21 the Court, which were designed and approved as a means to ensure that the highest price possible was

22 obtained for the Assets.

23         Based on the foregoing, the Debtor submits that the Purchase Price represents fair and

24 reasonable value for the Assets.

25                    **c.    Adequate Marketing.**

26         The intensive marketing efforts undertaken by Sherwood as the sales agent are set forth

27 in detail above and are not repeated here.  In consideration of the foregoing marketing efforts, the

28 Assets were adequately marketed.  Sherwood does not believe that any additional marketing would

1  result in a higher price being paid for the Assets as Sherwood had already contact everyone that

2  Sherwood could think of that would be a potential bidder for the Assets.

3               **d.**    **Good Faith.**

4              When a Bankruptcy Court authorizes a sale of assets pursuant to Section 363(b)(1), it is

5  required to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies*,

6  788 F.2d at 149. Such a procedure ensures that Section 363(b)(1) will not be employed to circumvent

7  creditor protections. *Id.* at 150. With respect to the Debtor's conduct in conjunction with the

8  proposed sale of the Assets, the good faith requirement focuses principally on whether there is any

9  evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to

10  take grossly unfair advantage of other bidders." *Abbotts Dairies*, 788 F.2d at 147; *Wilde Horse*

11  *Enterprises*, 136 B.R. at 842.

12              In addition, as stated in *Wild Horse Enterprises*:

13
14
15
16
17
> It is not bad faith per se for an insider to purchase property from an estate,
> even where the insider has a fiduciary duty to the estate. [*In re Apex Oil
> Co.*, 92 B.R. 847, 869-70 (Bankr. E.D. Mo. 1988)], *citing In re Andy
> Frain Services, Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986); *In re Naron &
> Wagner, Chartered*, 88 B.R. 85, 88 (Bankr. Md. 1988); and *In re Ancor
> Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla.1983). The question
> of good faith, even under these circumstances however, turns on whether
> debtor breached its fiduciary duty of full disclosure.

18

19  *Wilde Horse Enterprises*, 136 B.R. at 842. The important thing with insider sales is that the debtor

20  fully discloses to the court and creditors the relationship between the buyer and seller, as well as the

21  circumstances under which the negotiations have taken place, any marketing efforts, and the factual

22  basis upon which the debtor determined that the price was reasonable. Id.

23              Here, as discussed above, the Debtor and Titan disclosed to the Court, creditors, and the

24  two other Qualified Bidders that Titan was an insider and could and would participate in the Auction.

25  Further, as discussed above, due to the fact that Titan is an insider of the Debtor, Titan participated in

26  the Auction via Mr. Guarachi and independent counsel; Mr. Guarachi did not provide input on the

27  Debtor side; and Sherwood with the assistance of LNBYG ran the Auction. As also discussed above,

28  there were two-non-insider Qualified Bidders that bid at the Auction and there were many rounds of

1  bidding at the Auction culminating in a winning bid by Titan of $430,080, which is almost twice as

2  much as Grocery Outlet's $217,080 initial bid that was the highest at the time the Auction

3  commenced and served as the opening bid at the Auction.  Lastly, the Auction was conducted in

4  accordance with the Bid Procedures approved by the Court.  All three bidders that participated in the

5  Auction were provided every requested opportunity to break from the Auction and to bid more for the

6  Assets if they wanted to, and with the consent of all parties, Miller and Grocery Outlets teamed up at

7  the Auction after Grocery Outlets dropped out of the Auction.

8  Based on the foregoing, and for the reasons set forth in the annexed declaration of Bernie

9  Murphy in support of the Sale Motion and in Mr. Guarachi's separately filed declaration in support of

10  the Sale Motion, the Debtor submits that there has been no fraud or collusion in connection with the

11  proposed sale of the Assets.  Therefore, the good faith requirement has been satisfied, and Titan

12  should be deemed a "good faith" purchaser under Section 363(m) and entitled to the benefits under

13  Section 363(m).

14  **e.    Accurate and Reasonable Notice.**

15  The purpose of the notice is to provide an opportunity for objections and hearing before

16  the Court if there are objections.  *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D.Pa. 1988).  A notice is

17  sufficient if it includes the terms and conditions of the sale and if it states the time for filing

18  objections. *Id.*

19  As set forth in detail in Paragraph II.A.1 above, the Debtor has or will have complied

20  with all of the applicable notice provisions of the Bankruptcy Code, the FRBP and the LBR as

21  modified by the Bid Procedures Order.  Thus, the Notice of the Sale Motion (and proposed sale of the

22  Assets) should be deemed adequate, accurate, and reasonable by the Court.

23  **B.    THE COURT SHOULD APPROVE THE SALE OF THE ASSETS TO TITAN
24       FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND
       INTERESTS.**

25  **1.    APPLICABLE STANDARDS.**

26  The Court has the power to authorize the sale of property free and clear of liens, claims,

27  or interests.  *See* 11 U.S.C. § 363(f); *In re Gerwer*, 898 F.2d 730, 733 (9th Cir. 1990).

28  Section 363(f) permits a sale of property "free and clear of any interest in such property

of an entity other than the estate" if *any one* of the following five conditions is met:

> (1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)  such entity consents;
>
> (3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)  such interest is in bona fide dispute; or
>
> (5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Section 363(f) is written in the disjunctive; thus, satisfaction of any one of the five conditions is sufficient to sell property free and clear of liens.  *See e.g., Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988); *Mutual Life Ins. Co. of New York v. Red Oak Farms, Inc. (In re Red Oak Farms, Inc.)*, 36 B.R. 856, 858 (Bankr. W.D. Mo. 1984).

### a.    Section 363(f)(2).

In regard to Section 363(f)(2), the "consent" of an entity asserting an interest in the property sought to be sold, as referenced in Section 363(f)(2), can be implied if such entity fails to make a timely objection to the sale after receiving notice of the sale.  *In re Eliot*, 94 B.R. 343, 345 (E.D. Pa. 1988); *see also, In re Ex-Cel Concrete Company, Inc.*, 178 B.R. 198, 203 (B.A.P. 9th Cir. 1995) ("The issue here is whether there was consent or non-opposition by Citicorp."); *In re Paddlewheels, Inc.*, 2007 WL 1035151 (Bankr. E.D.La. April 2, 2007) ("The Sale Motion complies with section 363(f) of the Bankruptcy Code, in that the Trustee either obtained the consent of Whitney to the sale of the Vessel to Purchaser or Whitney had no objection to the Sale."); *In re Gabel*, 61 B.R. 661 (Bankr. W.D. La. 1985) (implied consent is sufficient to authorize a sale under § 363(f)(2)).

Here, because the PSI Stipulation and the Sale Motion, which provides for the approval of the CNB Stipulation, will result in the full satisfaction of CNB and PSI's secured claims, which are

the only known secured claims against the estate, the Debtor does not believe that CNB or PSI will object to the Sale Motion and that each of them will support the Sale Motion.

Based on the foregoing, the Assets can be sold free and clear and all liens, claims, encumbrances and interests pursuant to Section 363(f)(2).

**b.    Section 363(f)(3).**

Here, PSI's secured claim will be satisfied pursuant to the PSI Stipulation, which provides that PSI's secured claim will be satisfied via the transfer of the PSI Assets back to PSI.  As discussed above, the net Purchase Price of $391,372.80 to be retained by the estate after the payment of Sherwood's Success Fee exceeds CNB's secured claim in the amount of $316,671.88.

Based on the foregoing, the Assets can be sold free and clear and all liens, claims, encumbrances and interests pursuant to Section 363(f)(3).

**C.    THE COURT SHOULD APPROVE THE PAYMENT OF CERTAIN CLAIMS FROM SALE PROCEEDS UPON THE CLOSE OF THE SALE OF THE ASSETS.**

LBR 6004-1(h) provides as follows:

> A disbursement of proceeds [from a sale of estate property] must not be made without a specific order of the court authorizing the disbursement, ***except*** for payment to secured creditors, payment to a debtor of exempt proceeds, and payment for expenses of sale. Proceeds may be disbursed to pay auctioneer's fees and brokers' commissions without additional order of the court if payment is consistent with the terms of the order approving the sale or authorizing the employment of the auctioneer or broker.

LBR 6004-1(h).

Here, pursuant to the Sale Motion (including the approval of the CNB Stipulation requested therein), the Debtor is requesting authority to pay from the proceeds of the sale of the Assets on closing: (1) Sherwood's Success Fee (as defined in the Sherwood Employment Application) in the amount of $38,707.20 (*i.e.*, 9% of the Purchase Price of $430,080.00 as specified in the Sherwood Employment Application and Sherwood Employment Order) and (2) CNB's Secured Claim in the amount of $316,671.88.  As noted above, even after the payment of the foregoing amounts, the Debtor will have substantial cash and AR on hand, as well as the reserve for the payment of bankruptcy related professional fees, to utilize to make substantial distributions to other classes of creditors.  All

of the foregoing payments are consistent with allowed disbursements of sale proceeds under LBR 6004-1(h).

**D.**     **THE COURT SHOULD WAIVE THE 14-DAY STAY PERIOD SET FORTH IN BANKRUPTCY RULE 6004(h).**

FRBP 6004(h) provides, among other things, that an "order authorizing the … sale … of property . . . is stayed until the expiration of 14 days after entry of the court order, unless the court orders otherwise." Fed.R.Bankr.P. 6004(h).

Here, the Bid Procedures approved by the Court provide a hearing on October 13, 2022 and for Titan to close by no later than October 17, 2022. Based on the foregoing, the Debtor requests that the Court waive the stay under FRBP 6004(h) and that the Sale Order be effective immediately upon entry.

**III.**

**CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that this Court enter a Sale Order granting the Sale Motion and providing the relief requested in paragraphs (1) through (8) of the foregoing Sale Motion.

Dated: October 10, 2022          GUARACHI WINE PARTNERS INC.,
                                 a California corporation,

                                 */s/ Ron Bender*
                                 RON BENDER
                                 TODD M. ARNOLD
                                 LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
                                 Counsel for Chapter 11 Debtor and Debtor in Possession

1

2                          **DECLARATION OF BERNIE MURPHY**

3              I, BERNIE MURPHY, hereby declare as follows:

4              1.      I am over 18 years of age.   Except where otherwise stated, I have personal

5    knowledge of the facts set forth below and, if called to testify, would and could competently testify

6    thereto.

7              2.      I make this declaration in support of the Sale Motion to which this declaration is

8    attached.   Capitalized terms not otherwise defined herein shall have the same meaning ascribed to

9    such terms in the preceding Sale Motion.

10             3.      I am a Senior Managing Director of Sherwood Partners, Inc. ("Sherwood"), which

11   was retained as the Debtor's sales agent in connection with an Auction of the Assets.   I believe that

12   Sherwood was well-qualified to perform services as the Debtor's sales agent as described in the

13   Sherwood Employment Application and herein.   Sherwood, which has been operating since 1992, has

14   liquidated the assets of thousands of companies and has expertise in identifying potential buyers,

15   marketing assets and selling assets, including the Debtor's wine brands and related intellectual

16   property.    Additional information regarding Sherwood's qualifications can be obtained at:

17   https://www.shrwood.com/Home.

18             4.      I am a Certified Public Accountant, have more than 28 years of experience, and

19   have managed more than 450 sale transactions for distressed companies, including their intellectual

20   property.  I was primarily responsible for Sherwood's engagement by the Debtor.  My resumé is

21   attached to the Sherwood Employment Application as Exhibit "3."  While not included in Sherwood's

22   general firm resumé or my general personal resumé due to the vast number of sales that we have been

23   involved in, I have particular experience marketing and selling assets similar to those for which the

24   Debtor employed Sherwood to market and sell in this case.   Sale transactions that I have managed

25   have included upwards of a dozen transactions for the sale of bulk wine, case goods, and other wine

26   and related products, and included the following sale and related transactions:

27              •      My Wines Direct – Sold all bottled wine for $1 million to Grocery Outlet.

28              •      Tasting Room – Small bottle format for consumers to taste different wines.

1    • Crushpad – Provider of wine facility to allow consumers to make their own wine.

2    • Vinfolio – Wine storage business for high net worth consumers.

3    • Perfect Sip – Wine sale company

4  Further, prior to my time with Sherwood, I had several winery clients located in California, including

5  Concannon Vineyards, Wente Vineyards, Buena Vista Winery, and others.  I am also personally an

6  active wine enthusiast, and I regularly participate in wine auctions as a prospective buyer.

7    5.    In furtherance of its efforts to sell the Assets, on July 28, 2022, the Debtor filed the

8  Sherwood Employment Application [Dkt. 123] seeking (a) to employ Sherwood as the Debtor's sales

9  agent in connection with an auction of the Assets, (b) to pay Sherwood a $35,000 Advisory Fee (as

10  defined in the Sherwood Employment Application), which has been paid, and (c) to pay Sherwood a

11  9% Success Fee (as defined in the Sherwood Employment Application, *i.e.*, 9% of the total

12  consideration received from the sale of the Assets to third-parties) upon the closing pursuant to the

13  terms set forth in the Sherwood Employment Application and the Engagement Letter Agreement

14  between the Debtor and Sherwood attached to the Sherwood Employment Application as Exhibit "1,"

15  as modified by the terms set forth in the Sherwood Employment Application.  On August 22, 2022,

16  the Court entered the Sherwood Employment Order [Dkt. 136] approving the Sherwood Employment

17  Application, including the compensation set forth above.

18    6.    Also on July 28, 2022, the Debtor filed its Bid Procedures Motion [Dkt. 125] to

19  approve the Bid Procedures for an auction of the Assets.  In the Bid Procedures Motion, the Debtor

20  disclosed that "Alejandro Guarachi, the Debtor's owner, President, and CEO, may bid on certain

21  Assets and has retained counsel in connection with any such bid."  Bid Procedures Motion, n.3 and

22  21:9-13.  On August 22, 2022, the Court entered the Bid Procedures Order [Dkt. 137] approving the

23  Bid Procedures and authorizing Sherwood to execute and deliver a Bill of Sale of the Assets to the

24  winning bidder(s) for the Assets.  The Bid Procedures approved by the Court and sent to Potential

25  Bidders[6] are attached here to as **Exhibit "C."**  The Bid Procedures advised Potential Bidders that

26  "[t]he Debtor's inventory has some turnover as wine is purchased and sold in the ordinary course of

27  ────────────────

28  [6] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures.

the Debtor's business. Therefore, the inventory list will be updated when the Bidding Procedures are sent out to prospective Bidders and as the inventory list is further updated, the most current version of the inventory list will be made available to prospective Bidders." The Bid Procedures require that the sale of the Assets close by no later than October 17, 2022, unless the deadline is extended by mutual agreement of the Debtor and the buyer.

7.    Sherwood developed a target list of 90 Potential Bidders from Sherwood's database, research, and discussions with the Debtors management. Sherwood provided the Potential Bidders with information regarding the Auction, *i.e.*, an Executive Summary regarding the Assets for sale and the Bidding Procedures, which included a list of the Assets to be sold at the Auction, as amended based on the removal of the Kaiken inventory, the PSI inventory, and other inventory sold in the ordinary course of business. A summary of the outreach to Potential Bidders included the following key dates:

- Sales Process Launch Date: August 30, 2022,
- First Follow-up: September 1, 2022,
- Second Follow-up: September 7, 2022,
- Third Follow-up: September 12, 2022,
- Fourth Follow-up: September 19, 2022,
- Fifth Follow-up: September 26, 2022; and
- Overall: communicating with Potential Bidders.

8.    Some of the key reasons for a number of bidders not bidding on the Assets included the following:

- "This category of wine is not a good fit and not aligned well with our business,"
- "The volume is too low,"
- "Outside our consumer health portfolio interests,"
- "They don't purchase out of bankruptcy situations or asset liquidations,"
- "Not in their core acquisition interests,"
- "Wine is of too low value for our customers," and
- "They don't see this as a high growth consumer brand."

9.      Ultimately, Sherwood received three Qualified Bids from three Qualified Bidders, as follows:

| Bidder | Amount of Bid | Number of Cases | Assets |
|--------|---------------|-----------------|--------|
| Grocery Outlet | $217,080.00 | 18,090 cases | Inventory only |
| Miller Family Wines ("Miller") | $187,945.00 | 16,580 cases | Inventory and Brands |
| Titan | $154,323.00 | 20,436 cases | Inventory and Brands |

10.     Some of the difference in the case count of the Inventory resulted from an error in the function adding the total wine cases in Inventory.  Based on the foregoing, and because the highest bid did not include the Brands, in advance of the Auction, the Qualified Bidders were advised by Sherwood that (a) the winning bid at the Auction would be the highest Qualified Bid submitted at the Auction, regardless of which Assets the Qualified Bidder desired to include in its bid, (b) the winning Bidder would have the right up until the time of the sale closing to exclude any Assets that the winning Bidder elects not to take but the winning Bidder would not receive any "credit" or price reduction for leaving any wine Inventory or Brands behind, (c) if the winning Bidder announces at the conclusion of the Auction that there are certain Assets that the winning Bidder is not interested in acquiring, the other Bidders would be welcome to submit a bid following the conclusion of the Auction for some or all of those excluded Assets and any such bid would be considered for approval by Sherwood, and (d) if the winning Bidder announces at a later date up until the time of the sale closing that there are certain Assets that the winning Bidder is not interested in acquiring, Sherwood will notify the other bidders of the availability of these excluded Assets and will provide the other Bidders with the opportunity to submit a bid at that time for some or all of those excluded Assets and any such bid will be considered for approval by Sherwood.

11.     Pursuant to the Bid Procedures, the Auction commenced at 10:00 a.m. on October 6, 2022.  All parties participated via Zoom as allowed by the Bid Procedures.  Due to the fact that Titan is an insider of the Debtor, Titan participated in the Auction via Mr. Guarachi and independent counsel.  Mr. Guarachi did not provide input on the Debtor's side, and Sherwood with the assistance

of LNBYG ran the Auction.  The bids for the Assets at the Auction were as follows and, as noted below, resulted in Titan being the winning Bidder with a bid/Purchase Price of $430,080:

| 1 | Grocery Outlet | $217,080 | 13 | Miller | $350,000 |
|---|---|---|---|---|---|
| 2 | Miller | $222,080 | 14 | Titan | $355,000 |
| 3 | Titan | $227,080 | 15 | Miller | $375,000 |
| 4 | Grocery Outlet | Out | 16 | Titan | $380,000 |
|   | Break-out for Miller and Grocery Outlet to discuss possible joint bid. |   | 17 | Miller | $390,000 |
| 5 | Miller | $250,000 | 18 | Titan | $395,000 |
| 6 | Titan | $255,000 |   | Break-outs for Miller and Titan. |   |
| 7 | Miller | $275,000 | 19 | Miller | $400,000 |
|   | Break-outs for Miller and Titan. |   | 20 | Titan | $405,000 |
| 8 | Titan | $280,000 | 21 | Miller | $415,000 |
| 9 | Miller | $300,000 | 22 | Titan | $420,000 |
| 10 | Titan | $305,000 | 23 | Miller | $425,080 |
| 11 | Miller | $325,000 | **24** | **Titan – WINNING BID** | **$430,080** |
| 12 | Titan | $330,000 | 25 | Miller | Out |

12.    At the conclusion of the Auction, Titan advised the other Qualified Bidders and Sherwood that it would likely be excluding certain Assets from its purchase.  Titan has not yet specified the excluded Assets.  Once Titan does so, Sherwood will offer to sell the excluded Assets to the other Qualified Bidders and, if neither of them purchases the excluded Assets, the Debtor will seek to otherwise dispose of them.

13.    For the reasons discussed herein and in my declaration in support of the Sherwood Employment Application, I believe that the marketing of the Assets was expansive and more than adequate under the circumstances.

/ / /

/ / /

/ / /

14.    I believe that the Auction was conducted in conformance with the Bid Procedures, without any collusion, and that the Auction yielded the highest possible price for the Assets under the circumstances, particularly given the foregoing active bidding among three Qualified Bidders.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on October 10, 2022, at Santa Clara, California.

_____

BERNIE MURPHY

**EXHIBIT "A"**

RON BENDER (State Bar No. 143364)
TODD M. ARNOLD (State Bar No. 221868)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyg.com; tma@lnbyg.com

Attorneys for Chapter 11 Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>GUARACHI WINE PARTNERS INC.,<br><br>      Debtor and Debtor in Possession. | Case No.: 1:22-bk-10545-VK<br><br>Chapter 11 Case<br><br>Subchapter V<br><br><br>**STIPULATION PROVIDING FOR PAYMENT IN FULL OF OUTSTANDING SECURED DEBT OWING TO CITY NATIONAL BANK, N.A.**<br><br><br>[No Hearing on Stipulation Required] |

1

This *Stipulation Providing For Payment In Full Of Outstanding Secured Debt Owing To City National Bank, N.A.* (the "Stipulation") is hereby entered into by and among (1) Guarachi Wine Partners, Inc., the Chapter 11 debtor and debtor in possession herein (the "Debtor"), and (2) secured creditor City National Bank, N.A. ("CNB"), by and through their undersigned counsel of record, with respect to the following:

## RECITALS

A.    On May 4, 2022, the Debtor commenced this bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtor is operating its business and managing its estate as a debtor in possession.

B.    Also on May 4, 2022, the Debtor filed its *Emergency Motion For Entry Of An Interim Order: (I) Authorizing The Debtor To Use Cash Collateral On An Interim Basis Pending A Final Hearing; (II) Granting Adequate Protection Replacement Liens; (III) Scheduling A Final Hearing; And (IV) Granting Related Relief* (the "Motion").  [Dkt. 4.]

C.    On May 11, 2022, the Court entered an order granting the Motion on an interim basis.  [Dkt. 29.]

D.    On June 23, 2022, the Court entered a final order granting the Motion on a final basis (the "Final Order").  [Dkt. 77.]

E.    On September 6, 2022, the Court entered an order extending the term of the Final Order. [Dkt. 145].

F.    At the time of the Debtor's bankruptcy filing, the Debtor owed CNB a total outstanding indebtedness of $400,000 secured by a senior lien against all of the Debtor's assets.

G.    Pursuant to and in accordance with the various cash collateral orders entered by the Court, the Debtor has made a total of $143,009.35 of principal pay down payments to CNB along with all required interest payments.  This has left CNB with a current outstanding balance owed, after taking into account all of CNB's interest, fees and costs, of $316,671.88.  A schedule showing the computation of CNB's debt, which has been prepared by CNB, is attached hereto as Exhibit "1".

1    H.    The Debtor desires to pay the full amount of CNB's remaining outstanding debt.

2    **NOW, THEREFORE, BASED ON THE FOREGOING RECITALS OF FACT, WHICH ARE**

3    **INCORPORATED INTO THE AGREEMENT BELOW, THE PARTIES HERETO AGREE**

4    **AS FOLLOWS:**

5    1.    Within three business days following the entry of an order of the Court approving

6    this Stipulation, the Debtor shall pay the sum of $316,671.88 to CNB, which, provided such payment

7    is made by no later than October 21, 2022, CNB acknowledges shall result in payment in full of the

8    Debtor's outstanding indebtedness owing to CNB.

9    2.    Within five business days following the Debtor's payment to CNB, CNB shall file

10    a UCC-3 termination statement with the California Secretary of Statement terminating CNB's lien

11    against the Debtor's assets.    If CNB fails to timely file its UCC-3 termination statement, CNB

12    consents to the Debtor's filing of such UCC-3 termination statement.

Dated: October __, 2022        GUARACHI WINE PARTNERS INC.

                               _/s/ Ron Bender_____
                               RON BENDER
                               TODD M. ARNOLD
                               LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
                               Counsel for Debtor and Debtor in Possession


Dated: October __, 2022        CITY NATIONAL BANK, N.A.


                               _____
                               LANCE N. JURICH
                               LOEB & LOEB LLP
                               Attorneys for Secured Creditor

**EXHIBIT "1"**

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SUMMARY OF SECURED DEBT AS OF 9/27/22*

*The figures in this summary are calculated as of 9/27/2022. You must verify all figures at least 24 hours prior to pay off by calling City National Bank. All figures are subject to final verification by City National Bank. The summary indicates your loan interest is calculated on a daily basis. Issuance of this summary does not suspend the contractual requirement to make payments when due. If payments are not made, a late charge may be assessed to the loan in accordance with the loan documents

| | Summary of Payments Received | | | |
|---|---|---|---|---|
| Payment Date | Amount Received | Interest Portion (Paid) | Principal Portion | Principal Balance |
| | | | | $400,000.00 |
| 05/18/2022 | $13,375.00 | $875.00 | $12,500.00 | $387,500.00 |
| 07/13/2022 | $49,625.00 | $2,150.76 | $47,474.24 | $340,025.76 |
| 08/12/2022 | $21,000.00 | $964.89 | $20,035.11 | $319,990.65 |
| 09/20/2022 | $63,000.00 | $0.00 | $63,000.00 | $256,900.65 |
| Total Pmt. Rcvd. | $84,000.00 | $3,990.65 | $143,009.35 | |

| | Summary of Additional Charges | | |
|---|---|---|---|
| Unpaid Interest (through 9/27/22 at $36.14/day) | UCC-1 Termination Fee | Legal Fees | Total Additional Charges |
| $1,771.82 | $72.46 | 6/17/22 $7,895.25 | |
| | | 8/12/22 $11,739.60 | |
| | | 8/22/22 $10,895.85 | |
| | | 8/31/22 $12,626.55 | |
| | | 9/21/22 $7,769.70 | |
| | | Est. legal fees: $7,000.00 | |
| | | Total Fees: $57,926.95 | $59,771.23 |

**TOTAL SECURED DEBT (Principal Balance Owing + Total Additional Charges): $316,671.88**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "B"**



2020 Hurley Way, Suite 350
Sacramento, CA 95825
clasorders@clasinfo.com || 800.952.5696

# UCC Search Report

| | |
|---|---|
| Indices searched: | UCCs, Federal Tax Liens, State Tax Liens, Judgment Liens |
| Jurisdiction: | California Secretary of State, Uniform Commercial Code Division |
| Index date: | 02/03/2022 |
| Search date: | 02/16/2022 |
| Search type: | Debtor Name Search |
| Debtor name: | |
| Search key entered: | Guarachi Wine Partners |

## Results

*Based on a search of the indices of the California Secretary of State, Uniform Commercial Code Division, there are no active liens of record other than those set out below. Liens reflected in this report were based on the searcher's individual search parameters, the search key entered, as well asthe searcher's choice of the liens ultimately included or excluded herein.*
**Certification can only be obtained through the California Secretary of State, Uniform Commercial Code Division.**

*For online searches, index dates are calculated using an algorithm that analyzes record counts and filing dates contained in the UCC and Lien data. Due to the implementation of new state filing systems as well as the effects of COVID-19 closures, state data has become more prone to inconsistencies making it difficult to assign index dates accurately. We encourage clients to consider these results as preliminary and to request an official search in addition.*

1. **UCC** *(Active)* Lapse Date: **11/03/2025**
   Document number: **20057047708482** Filed: **11/03/2005**

| **Debtor(s)** | **Secured Part(ies)** |
|---|---|
| GUARACHI WINE PARTNERS INC. | CITY NATIONAL BANK |
| 22837 VENTURA BLVD., 3RD FLOOR  WOODLAND HILLS, CA 91364 | PO BOX 60938  LOS ANGELES, CA 90060 |
| T.G.I.C. IMPORTERS INC. | CITY NATIONAL BANK, NA |
| 23035 VENTURA BLVD., SUITE 200  WOODLAND HILLS, CA 91364 | 15260 VENTURA BOULEVARD, SUITE 1600  SHERMAN OAKS, CA 91403 |
| T.G.I.C. IMPORTERS INC. | |
| 22837 VENTURA BLVD., 3RD FLOOR  WOODLAND HILLS, CA 91364 | |

**Amendments**
Amendment
Filing number: **200972065507** Filing date: **08/25/2009**

Continuation
Filing number: **201072329158** Filing date: **05/26/2010**

Amendment
Filing number: **201272984835** Filing date: **01/24/2012**

Amendment
Filing number: **201574607841** Filing date: **04/21/2015**

Continuation
Filing number: **201574677585** Filing date: **06/03/2015**

Amendment

Filing number: **201977443597**  Filing date: **10/31/2019**

Continuation

Filing number: **U200011203316**  Filing date: **08/13/2020**

2. **UCC** *(Active)*  Lapse Date: **11/30/2023**

  Document number: **20187684820923**  Filed: **11/30/2018**

| **Debtor(s)** | **Secured Part(ies)** |
|---|---|
| GUARACHI WINE PARTNERS, INC. | PARKER STATION INC. |
| 22837 VENTURA BLVD., STE. 300  WOODLAND HILLS, CA 91364 | 6200 FOXEN CANYON RD., P.O. BOX 908  LOS OLIVOS, CA |

*We assume no liability with respect to the identity of any party named or referred to in this report, nor with respect to the validity, legal effect or priority of any matter shown herein; nor, due to our inability to independently verify the accuracy of this data as provided by government and other sources, do we make any guaranty or representation as to its accuracy.*

**Report Parameters**
*The UCC Revised Article 9 Model Administrative Rules (MARS) provide state filing offices with a set of guidelines for producing a legally compliant UCC lien search report. The search tool used to create this search report was designed to satisfy the requirements under MARS while providing the searcher with increased flexibility.*
*Flexible search logic generates a more inclusive search report and addresses the inconsistencies in searches performed within states that did not effectively adopt the MARS guidelines. Further, these specially designed broad-based searching features aid in the location of involuntary liens such as Federal and State Tax Liens and Judgment Liens and liens that may not be located in state databases limited to the MARS guidelines for the reporting of UCCs.*

--------------- End Of Report ------------------

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**05-7047708482**

**11/03/2005 17:00**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

5724680007    UCC 1 FILING

A. NAME & PHONE OF CONTACT AT FILER [optional]
AD/CA/#048/BC# NEW

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

City National Bank, NA          (10028415)
City Loan Center
831 South Douglas Street, Suite 107
El Segundo, CA  90245

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | |
|---|---|
| 1a. ORGANIZATION'S NAME | T.G.I.C. IMPORTERS INC. |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 23035 VENTURA BLVD., SUITE 200 | WOODLAND HILLS | CA | 91364 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Corporation | CA | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | |
|---|---|
| 2a. ORGANIZATION'S NAME | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | |
|---|---|
| 3a. ORGANIZATION'S NAME | City National Bank, NA |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 15260 Ventura Boulevard, Suite 1600 | Sherman Oaks | CA | 91403 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
T.G.I.C. IMPORTERS INC.

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Harland Financial Solutions
400 S.W. 6th Avenue, Portland, Oregon 97204

## UCC FINANCING STATEMENT AMENDMENT

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|
| Diligenz |
| (800)858-5294 |

| B. SEND ACKNOWLEDGMENT TO: (Name and Address) | |
|---|---|
| CORPORATION SERVICE COMPANY | **DOCUMENT NUMBER:** 22121060002 |
| 6500 HARBOR HEIGHTS PKWY STE 400 | **FILING NUMBER:** 09-72065507 |
| MUKILTEO, WA 98275 | **FILING DATE:** 08/25/2009 10:37 |
| USA | **IMAGE GENERATED ELECTRONICALLY FOR XML FILING** |
| | THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 05-7047708482 | |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any  ☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☑ restated collateral description, or describe collateral ☐ assigned.

All assets of Debtor.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| | a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | City National Bank, A National Banking Association | | | |
| | b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
Debtor: T.G.I.C. Importers Inc. - xx2572 / 1052602/ cd [44582328]

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Corporation Service Company
800-858-5294

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DRIVE
SPRINGFIELD, IL 62703
USA

**DOCUMENT NUMBER:** 25108500002
**FILING NUMBER:** 10-72329158
**FILING DATE:** 05/26/2010 10:23
IMAGE GENERATED ELECTRONICALLY FOR XML FILING

THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
05-7047708482

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c

**6. CURRENT RECORD INFORMATION:**

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any ☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE): check only one box.**
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| | a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | CITY NATIONAL BANK, NA | | | |
| | b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
BC# N505071228 [50384903]

FILING OFFICE COPY

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Gisella Melendez
800-331-3282

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
CT LIEN SOLUTIONS
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

**DOCUMENT NUMBER:** 31821920002
**FILING NUMBER:** 12-72984835
**FILING DATE:** 01/24/2012 17:44
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
05-7047708482

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only one of these.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☑ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| T.G.I.C. IMPORTERS INC. |  |  |  |
| **6b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|  |  |  |  |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| T.G.I.C. IMPORTERS INC. |  |  |  |
| **7b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|  |  |  |  |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 22837 VENTURA BLVD., 3RD FLOOR | WOODLAND HILLS | CA | 91364- | USA |

| 7d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
|  |  | Corporation | CA | C1500792   ☐ NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| CITY NATIONAL BANK, NA |  |  |  |
| **b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|  |  |  |  |

**10. OPTIONAL FILER REFERENCE DATA**
CA-0-31509452-46167209

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>Gisella Melendez<br>800-331-3282 | |
| **B. E-MAIL CONTACT AT FILER (optional)** | |
| **C. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>CT LIEN SOLUTIONS<br>2727 ALLEN PARKWAY<br>HOUSTON, TX 77019<br>USA | **DOCUMENT NUMBER: 48422130002**<br>**FILING NUMBER: 15-74607841**<br>**FILING DATE: 04/21/2015 09:45**<br><br>IMAGE GENERATED ELECTRONICALLY FOR XML FILING<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 05-7047708482 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    **AND** Check one of these three boxes to:

This Change affects ☑ Debtor or ☐ Secured Party of record.    ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a and 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | T.G.I.C. IMPORTERS INC. | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | GUARACHI WINE PARTNERS INC. | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 22837 VENTURA BLVD., 3RD FLOOR | WOODLAND HILLS | CA | 91364 | USA |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | CITY NATIONAL BANK, NA | | | |
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
CA-0-47686827-49804017

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>Gisella Melendez<br>800-331-3282 | |
| **B. E-MAIL CONTACT AT FILER (optional)** | |
| **C. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>CT LIEN SOLUTIONS<br>2727 ALLEN PARKWAY<br>HOUSTON, TX 77019<br>USA | **DOCUMENT NUMBER: 49204460002**<br>**FILING NUMBER: 15-74677585**<br>**FILING DATE: 06/03/2015 09:37**<br>**IMAGE GENERATED ELECTRONICALLY FOR XML FILING**<br>**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY** |

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE NUMBER**<br>05-7047708482 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:      **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record.     ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a and 7b and item 7c     ☐ ADD name: Complete item 7a or 7b, and item 7c     ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change – provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | | | | |
|---|---|---|---|---|
| | 7a. ORGANIZATION'S NAME | | | |
| OR | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME<br>CITY NATIONAL BANK, NA | | | |
|---|---|---|---|---|
| OR | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
CA-0-48291375-50006736

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Lien Solutions |
| 800-331-3282 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071
USA

**DOCUMENT NUMBER:** 83325420002
**FILING NUMBER:** 19-77443597
**FILING DATE:** 10/31/2019 16:00

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Filer: Attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 05-7047708482 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record.    ☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a and 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | CITY NATIONAL BANK, NA | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | City National Bank | | |
| | 7b. INDIVIDUAL'S SURNAME | | |
| | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | |
| | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| PO Box 60938 | Los Angeles | CA | 90060 | USA |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)

If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | CITY NATIONAL BANK, NA | | | |
| | b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

10. OPTIONAL FILER REFERENCE DATA:
CA-0-72360008-58019937- Debtor: GUARACHI WINE PARTNERS INC.

**FILING OFFICE COPY**



U200011203316



B0314-4697 08/13/2020 8:49 AM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State, Alex Padilla*
**UCC FINANCING STATEMENT AMENDMENT (UCC 3)**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| :---: |
| **-FILED-** |

File #: U200011203316

Date Filed: 8/13/2020

---

Submitter Information:

| | |
| --- | --- |
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Organization Name | LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |
| Address | P O BOX 29071 |
| | GLENDALE, CA 912099071 |

Amendment Action Information:

| | |
| --- | --- |
| Initial Financing Statement File Number | 057047708482 |
| Date Filed | 11/03/2005 |
| Amendment Action | Continuation |

Name of Secured Party of Record Authorizing This Amendment:

☐ If this Amendment is authorized by a Debtor, check this box and select the name of the Authorizing Debtor below.

| Authorizing Secured Party Name | City National Bank |
| --- | --- |

Optional Filer Reference Information:

76301606

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

8059661501

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Mullen & Henzell LLP
112 East Victoria Street
Santa Barbara, CA 93101-93101
USA

**DOCUMENT NUMBER:** 75175630002
**FILING NUMBER:** 18-7684820923
**FILING DATE:** 11/30/2018 11:20

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

---

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Guarachi Wine Partners, Inc. | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 22837 Ventura Blvd., Ste. 300 | Woodland Hills | CA | 91364 | USA |

---

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

---

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Parker Station Inc. | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6200 Foxen Canyon Rd., P.O. Box 908 | Los Olivos | CA | | USA |

---

**4. COLLATERAL:** This financing statement covers the following collateral:

All of Debtor's right, title and interest in (i) the Parker Station wine brand (the "Brand"); (ii) all associated registered and common law trademarks, trademark registrations, service marks, trade names, copyrights, licenses, designs, logos, marketing and promotion materials and all intellectual property rights relating to the Brand; (iii) any similar rights owned, used by or licensed to Debtor and any applications currently pending therefore; (iv) the wine inventory associated with the Brand; (v) the additional wine inventory that the Secured Party has agreed to produce under the Brand for Debtor; (vi) all confidential information (including electronic information), operational data, marketing information, sales records, customer lists, customer files (including customer credit and collection information; (vii) telephone numbers, and any domain names, internet websites and all information and data on such websites and any historical and financial records and files; (viii) all third party warranties and indemnities, and all other rights relating to the Brand and the inventory listed under subsections (iv) and (V) (collectively, the "Inventory"); (ix) all goodwill related to,

---

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| **6a.** Check only if applicable and check only one box: | **6b.** Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

---

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual
Debtor name did not fit, check here ☐

| | |
|---|---|
| | **9a. ORGANIZATION'S NAME** |
| | Guarachi Wine Partners, Inc. |
| **OR** | **9b. INDIVIDUAL'S SURNAME** |
| | **FIRST PERSONAL NAME** |
| | **ADDITIONAL NAME(S)/INTITAL(S)**      **SUFFIX** |

**DOCUMENT NUMBER: 75175630002**

**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit,
modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | | |
|---|---|---|---|---|---|
| | **10a. ORGANIZATION'S NAME** | | | | |
| | **10b. INDIVIDUAL'S SURNAME** | | | | |
| **OR** | **INDIVIDUAL'S FIRST PERSONAL NAME** | | | | |
| | **INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | | | | **SUFFIX** |
| **10c. MAILING ADDRESS** | | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| | | | | | |
|---|---|---|---|---|---|
| | **11a. ORGANIZATION'S NAME** | | | | |
| **OR** | **11b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **11c. MAILING ADDRESS** | | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

12. ADDITIONAL SPACE FOR ITEM 4 (collateral):

arising from or used in connection with the Brand and the Parker Station business including all goodwill relating to each trademark associated with the Brand; all accounts, deposit accounts, accounts receivable, chattel paper, instruments, documents, general intangibles, or other rights to payment pertaining to the Brand and the inventory (collectively, the "Rights of Payment"), together with all renewals, and including all securities, guaranties, warranties, indemnity agreements, insurance policies and other agreements pertaining to such rights to payment; (xi) all contract rights; (xii) all books and records, including computer records; (xiii) any and all accessions, accessories, replacement and additions to any of the property described in subsections (i) through (xii), whether added now or later, (including insurance proceeds and refunds of insurance premiums), if any, and sums due from any third party who has damaged or destroyed the property or from that party's insurer, whether due to judgement, settlement or other process; and (xiv) all income and profits from, distributions on, proceeds of and right and privileges pertaining to any of the property identified or included in subsections (i) through (xii).

| | |
|---|---|
| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing. |
| 15. Name and address of RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

17. MISCELLANEOUS:

**FILING OFFICE COPY**

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because individual
Debtor name did not fit, check here ☐

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | |
| Guarachi Wine Partners, Inc. | |
| **9b. INDIVIDUAL'S SURNAME** | |
| **FIRST PERSONAL NAME** | |
| **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

**DOCUMENT NUMBER: 75175630002**

**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| **10a. ORGANIZATION'S NAME** | | | | |
| **10b. INDIVIDUAL'S SURNAME** | | | | |
| **INDIVIDUAL'S FIRST PERSONAL NAME** | | | | |
| **INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | | | | **SUFFIX** |
| **10c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

**11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME:** Provide only <u>one</u> name (11a or 11b)

| | | | |
|---|---|---|---|
| **11a. ORGANIZATION'S NAME** | | | |
| **11b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

**12. ADDITIONAL SPACE FOR ITEM 4 (collateral):**

| | |
|---|---|
| **13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)** | **14. This FINANCING STATEMENT:** ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing. |
| **15. Name and address of RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):** | **16. Description of real estate:** |

**17. MISCELLANEOUS:**

**FILING OFFICE COPY**

1
2
3
4
5
6
7
8
9
10
11
12           **EXHIBIT "C"**
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## BIDDING PROCEDURES - GUARACHI WINE PARTNERS INC.

These bidding procedures (the "Bidding Procedures") relate to the proposed free and clear sale by Guarachi Wine Partners Inc. (the "Debtor") of its wine inventory, wine brands, and related assets (the "Assets"), provided that the Assets offered for sale at the Auction (as defined below) will *not* include the Debtor's accounts receivable. A schedule of the Assets being sold is attached hereto as **Exhibit "1."**

At a hearing held on August 18, 2022 before the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court") Case No.: 1:22-bk-10545-VK, the Bankruptcy Court approved these Bidding Procedures, which are intended to ensure that the highest and best possible price is paid for the Assets by one or more purchasers who have the financial ability to close on their purchase of the Assets (the "Sale"). A copy of the Bankruptcy Court order (the "Bidding Procedures Order") approving these Bidding Procedures is attached hereto as **Exhibit "2"**.

These Bidding Procedures assume that there will be an open auction for the sale of the Assets with no stalking horse bidder.[1]

### Free and Clear Sale of the Assets.

An auction (the "Auction") will take place on **October 6, 2022 commencing at 10:00 a.m. (prevailing Pacific time)**. All Qualified Bidders (as defined below) and their representatives will be authorized to appear at the Auction in person or by Zoom video. In person bidding will take place at the law offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG"), which

---

[1] The Debtor reserves the right to seek a further order of the Bankruptcy Court to alter these Bidding Procedures, including to include a stalking horse bidder, if the Debtor determines that doing so is in the best interests of its bankruptcy estate.

1

is serving as bankruptcy counsel to the Debtor.  The Zoom information for the Auction will be provided in advance to all Qualified Bidders who wish to participate in the Auction by Zoom.

The sale of the Assets will be free and clear of all liens, claims and interests pursuant to Section 363(b) and (f) of the Bankruptcy Code, with any liens that exist against the Assets to attach to the proceeds of the sale with the same extent, validity and priority as such liens have in and to the Assets.  All sales of the Assets will be consummated with the delivery of a bill of sale signed by Sherwood Partners, Inc. ("Sherwood") that will identify the buyer, the Assets being sold and the purchase price.  Sherwood will have the authority to execute all such bills of sale as an authorized agent of the Debtor.

The net sale proceeds (after Sherwood has been paid its 9% commission) from all sales of the Assets will be deposited into a trust account maintained by LNBYG and will not be disbursed except in accordance with a further order of the Court.

### Bidding Process

The Debtor has retained Sherwood to serve as the Debtor's sales agent.  Sherwood will manage the Auction sale process and, with the assistance of LNBYG and input from the Debtor, will conduct the Auction.

### Lotting of Wine Inventory

The wine inventory will be broken into two primary lots – one containing Parker Station branded wine and one containing all other brands of wine (the "Primary Lots").  Each of the Primary Lots may be broken into sub-lots at the discretion of the Sherwood with input from the Debtor and LNBYG.

### Key Dates for Interested Bidders

These Bidding Procedures provide interested parties with a detailed explanation of what they need to do to participate in the Auction.

The key dates for the Auction and related free and clear asset sale process are as follows:

| | |
|---|---|
| September 29, 2022 at 5:00 p.m. (prevailing Pacific time) | Initial Bid Deadline – Due date for initial bids to be submitted by all parties who wish to participate in the Auction.  In order to participate in the Auction, all prospective bidders must do all of the following on or before the foregoing deadline:<br>1. Submit a schedule identifying all of the Assets that the bidder desires to have the right to bid on together with their proposed initial bid;<br>2. Submit all documents to enable Sherwood to determine whether the proposed bidder is financially qualified to participate in the Auction; and<br>3. Submit a deposit equal to 10% of the proposed initial bid, which 10% deposit would be deemed non-refundable if the bidder is deemed to be the winning bidder at the Auction and then the Debtor's proposed free and clear sale of the Assets to the bidder is approved by the Bankruptcy Court.  Bidders will have the right to withdraw their bid at any time up until Noon (prevailing Pacific time) on October 5, 2022, in which case they will receive a return of their 10% deposit and no longer be eligible to participate in the Auction. |
| October 6, 2022 at 10 a.m. (prevailing Pacific time) | Auction to be held at the offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P., which are located at 2818 La Cienega Avenue, Los Angeles, California 90034, or via Zoom with all Qualified Bidders to be provided with particulars in advance of the Auction. |

3

| October 13, 2022 at 2:00 p.m. | Sale Hearing to be conducted before the Bankruptcy Court for the Bankruptcy Court to approve the Debtor's sale of the Assets to the winning bidder(s) at the Auction (the "Sale Hearing") |
|---|---|
| October 17, 2022 | Outside date by when the winning bidder(s) at the Auction are required to close their purchase of the Assets unless the winning bidder(s) and the Debtor jointly agree to extend the outside closing date |

### Due Diligence Access / Auction Participation Requirements

In order to participate in the Auction process as a bidder, a person or entity interested in purchasing the Assets (a "Potential Bidder") must deliver or have previously delivered to Sherwood all of the following documents (the "Participation Requirements"): (1) an executed non-disclosure agreement with the form to be obtained from Sherwood; (2) a statement demonstrating a bona fide interest in purchasing the Assets; and (3) one of the following: (i) written evidence of readily available funds equal to the Potential Bidder's initial bid and any increase the Potential Bidder desires to have authority to bid to, with Sherwood to keep all such information completely confidential, (ii) a firm commitment for financing sufficient for the Potential Bidder to timely consummate its purchase of the Assets, or (iii) other sufficient information, which may include current audited financial statements and the latest unaudited financial statements of the Potential Bidder and/or its equity holders, or such other form of financial disclosure and credit-quality support or enhancement that will allow Sherwood to make a reasonable determination as to the Potential Bidder's financial and other capabilities to timely consummate their purchase of the Assets. Any Potential Bidder who has satisfied the foregoing Participation Requirements will be afforded, subject to the other provisions of these Bidding Procedures, due diligence access and

4

additional information through access to an online data room, as well as, upon reasonable advance notice, on-site visits and direct communication with management as the Potential Bidder desires and Sherwood determines to be appropriate under the circumstances and subject to the availability of such management.

### Due Diligence Limitations

The Debtor and Sherwood shall not be obligated to furnish any due diligence information to any Potential Bidder after the Bid Deadline (as defined below).  In their discretion, the Debtor and Sherwood may, but shall not be obligated to, furnish additional information after the Bid Deadline to Qualified Bidders.  The Debtor and Sherwood reserve the right to withhold any due diligence materials from any Potential Bidder that the Debtor and Sherwood determine are business-sensitive or otherwise not appropriate for disclosure to any Potential Bidder who is a competitor of the Debtor or is affiliated with any competitor of the Debtor.

Neither the Debtor nor Sherwood nor any of their representatives or advisors shall be obligated to furnish information of any kind whatsoever to any person or entity who is not determined to have satisfied the Participation Requirements.

All due diligence requests must be directed to Sherwood, Attn: Bernie Murphy bmurphy@sherwoodpartners.com.

### Due Diligence from Potential Bidders

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtor or Sherwood or their advisors regarding such Potential Bidder, including, without limitation, the Potential Bidder's financial ability to close the Sale.  The failure by a Potential Bidder to comply with any such requests may be a basis for the Debtor and Sherwood to determine that such Potential Bidder is not or cannot be a Qualified Bidder.

### Initial Bid Deadline for All Bidders

The deadline for all bidders to submit their initial bid for the Assets the bidder desires to purchase ("Initial Bid") is **September 29, 2022 at 5:00 p.m. (prevailing Pacific time)** (the "Bid Deadline").  An Initial Bid may be transmitted electronically and must be received on or before the Bid Deadline by Sherwood and LNBYG (collectively, the "Receiving Parties").  An Initial Bid received after the Bid Deadline shall not be considered unless the Debtor and Sherwood, for good cause, consent.

### Bid Requirements

To be eligible to participate in the Auction, each Initial Bid and each Potential Bidder submitting an Initial Bid (each, a "Bidder") must be determined by the Debtor and Sherwood to have satisfied all of the conditions listed below (collectively, the "Bid Requirements"):

1.      *Terms*.  An Initial Bid must identify which of the Assets the Bidder is making an Initial Bid upon and any other Assets the Bidder wants to be eligible to bid upon at the Auction, along with the Bidder's proposed initial purchase price.  The Initial Bid must be signed by an authorized representative of the Bidder.

2.      *No Contingencies*.  An Initial Bid must include a statement that there are no conditions precedent to the Bidder's authority to consummate its purchase of the Assets bid upon, other than entry by the Bankruptcy Court of an order approving the sale of the Assets to the Bidder (the "Sale Order").

3.      *Bid Requirements*.  An Initial Bid must set forth a cash purchase price for the Assets.  Without limiting the generality of the foregoing, an Initial Bid (i) may not be conditioned upon obtaining financing, any internal, regulatory, or other third party approvals, or on the outcome or review of due diligence, (ii) may not provide for a closing

date (the "Sale Closing") that will be later than **October 17, 2022**, unless both the Debtor and the winning Bidder jointly agree to extend the Sale Closing date at their sole and absolute discretion, and (iii) may not be conditioned upon the Bankruptcy Court Sale Order approving the sale becoming a "final order."

4.      *Irrevocable*.  An Initial Bid must state that unless the Bidder withdraws its Initial Bid by Noon (prevailing Pacific time) on October 5, 2022, the offer made by the Bidder in its Initial Bid is binding and irrevocable until the conclusion of the Sale Hearing and such Initial Bid must continue to remain binding and irrevocable through the Sale Closing if the Initial Bid or any higher bid submitted by the Bidder at the Auction is accepted by the Debtor at the Auction as the Winning Bid (as defined below) or the Winning Back-Up Bid (as defined below) and approved by the Bankruptcy Court at the Sale Hearing.

5.      ***Identity of Bidder***.  An Initial Bid must fully disclose the identity of each entity or person that will be bidding for or purchasing the Assets, including all material equity holders (i.e., parties that own at least 10% of the equity of the Bidder) in the case of a Bidder that is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Initial Bid, and the complete terms of any such participation, including any agreements, arrangements or understanding concerning collaborative or joint bid or any other combination concerning the proposed Initial Bid.  An Initial Bid must also fully disclose any connection with or participation by any "insider" of the Debtor or any relative or any affiliate of any "insider" of the Debtor. An Initial Bid must also fully disclose any connection with or participation by any current creditor or equity holder of the Debtor.

7

6.      *Contact Information*.    An Initial Bid must include the names and contact information (including phone numbers and email addresses) of all authorized representatives of the Bidder who will be available to answer questions regarding the Initial Bid, including advisors and related parties.

7.      *Deposit*.  An Initial Bid must include a good-faith deposit in immediately available funds equal to ten percent (10%) of the amount of the Initial Bid (the "Deposit").  If a Bidder elects to increase the amount of its Initial Bid at the Auction, the Bidder will not be required to increase the amount of its Deposit.  If a bid submitted at the Auction ("Bid"), including any Initial Bid, is determined to be the Winning Bid at the Auction and the Bidder who submitted such Winning Bid fails to timely close the Sale for any reason other than the Bankruptcy Court not approving the Winning Bid at the Sale Hearing, the Deposit shall become non-refundable and be forfeited to the Debtor.  The same shall apply to any Winning Back-Up Bid in the event the Winning Bidder fails to timely close the Sale, the Winning Back-Up Bidder is notified in writing that it is now the Winning Bidder, and the Winning Back-Up Bidder fails to close its purchase within ten (10) days of having been notified that it is now the Winning Bidder, unless the Winning Bidder and the Debtor jointly agree to extend the sale closing date.  All Deposits of all Qualified Bidders shall be held in a segregated trust account maintained by LNBYG and shall be returned (other than with respect to the Winning Bidder and the Winning Back-Up Bidder) promptly after the conclusion of the Auction.  All Bidders shall have the right to withdraw their Initial Bid at any time up until Noon (prevailing Pacific time) on October 5, 2022, in which case the Bidder will receive a return of their Deposit and be prohibited from participating in the Auction.

8.    ***Financing Sources***.  An Initial Bid must contain written evidence of available funds or a firm irrevocable commitment for financing sufficient to consummate the proposed Sale with appropriate contact information for such financing sources, with Sherwood to determine whether such evidence of financing satisfies these Bidding Requirements and enables the Bidder to participate in the Auction, with such determination to be in Sherwood's sole and absolute discretion.

9.    ***Termination Fees.***  An Initial Bid must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and by submitting the Initial Bid, the Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. §503 related in any way to the submission of its Initial Bid or its participation in the Auction.

10.    ***Identities of the Receiving Parties***:  All Initial Bids must be delivered by email to each of the Receiving Parties:

Sherwood, Attn: Bernie Murphy (bmurphy@sherwoodpartners.com); and LNBYG - Attention: Ron Bender (RB@LNBYG.com) and Todd M. Arnold (TMA@LNBYG.com).

### Qualified Bidders and Qualified Bids

Potential Bidders who have satisfied the Participation Requirements and Bid Requirements will be deemed "Qualified Bidders," and Initial Bids that meet all of the Bid Requirements described above will be deemed "Qualified Bids," in each case, only if the Debtor and Sherwood conclude in the exercise of their business judgment, that such Initial Bid would be consummated if selected as the Winning Bid; provided, however, that, for avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtor or Sherwood to their satisfaction, the Debtor and Sherwood shall have right, in

their sole and absolute discretion, to disqualify any Qualified Bidder and Qualified Bid, and such Bidder shall not be entitled to attend or otherwise participate in the Auction.

### No Use of Unsecured Credit Bids

No unsecured creditor may offer any type of credit bidding in connection with any Bid or the Sale.

### Notice of Qualified Bids

By **2:00 p.m. (prevailing Pacific time) on October 5, 2022**, Sherwood shall identify to all Qualified Bidders: (a) each and every Initial Bid that Sherwood considers to be a Qualified Bid and (b) if more than one Qualified Bid has been timely received, the Qualified Bid that will constitute the Opening Bid at the Auction and the bidding order in which the Auction will be conducted.

### Auction

If no Qualified Bids are received then the Auction will be deemed automatically cancelled unless the Debtor and Sherwood determine otherwise, in their sole and absolute discretion. If only one Qualified Bid is received, there will be no Auction and the Qualified Bidder will be deemed the Winning Bidder. If more than one Qualified Bid is received, the Auction will proceed as scheduled with the Auction to commence at **10:00 a.m. (prevailing Pacific time) on October 6, 2022** at the law offices of Levene, Neale, Bender, Yoo & Brill L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034 [with Zoom participation permitted]**.**

### Participation in and Attendance at Auction

Only Sherwood, the Debtor, and Qualified Bidders along with their representatives, counsel, and advisors may attend the Auction (such Auction to be in person or via Zoom, Webex

or similar virtual means, as applicable), and only Qualified Bidders shall be permitted to submit any Bids at the Auction.

### No Collusion; Good Faith Bona Fide Offer

Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; (ii) its Initial Bid and any higher bid submitted at the Auction is a good-faith *bona fide* offer; (iii) it intends to consummate the proposed transaction if selected as the Winning Bidder; and (iv) it acknowledges that, if chosen, it will serve as the Winning Back-Up Bidder.

### Opening Bid at the Auction

The Qualified Bid(s) determined by Sherwood and the Debtor to constitute the highest and best Initial Bid(s) will serve as the opening bid(s) (the "Opening Bid(s)") at the Auction. Sherwood will notify all Qualified Bidders in advance of the Auction which Initial Bid(s) have been accepted as the Opening Bid(s) at the Auction and the order in which the bidding at the Auction will proceed.

### Conducting the Auction

Sherwood and LNBYG will direct and preside over the Auction. At the start of the Auction, and after each Qualified Bidder acknowledges on the record that it has not engaged in any collusion with respect to the bidding, that its Initial Bid is a good faith *bona fide* offer, and that it intends to consummate the proposed transaction if selected as the Winning Bidder or the Winning Back-Up Bidder, Sherwood and LNBYG will identify, confirm and describe the Opening Bid(s). The bidding will then ensue in the bidding order provided by Sherwood to all Qualified Bidders in advance of the Auction. All bidding after the Opening Bid shall continue in bidding increments of at least $5,000 or figures that are wholly divisible by $5,000. All bids will be made and received in one room (or otherwise in the presence via Zoom, Webex or similar virtual means

11

of all parties), on an open basis, and all Qualified Bidders will be entitled to be present for all bidding with the understanding that the identity of each Qualified Bidder will be fully disclosed to all Qualified Bidders before the Auction and the material terms of each Qualified Bid submitted prior to the Auction, and all successive bids made at the Auction, will be fully disclosed to all Qualified Bidders.  All Qualified Bidders will be permitted to bid at the Auction based on what Sherwood and LNBYG determine to be an appropriate amount of time to respond to each prior submitted Bid.

Prior to the Auction, Sherwood will randomly assign to each Qualified Bidder a bidder number, except that the Qualified Bidder whose Initial Bid was accepted as the Opening Bid will be assigned bidder number 1.  Once the Opening Bid has been described by Sherwood and LNBYG, the bidding will then pass to Bidder number 2.  Bidder number 2 will have the option of submitting an overbid to the Opening Bid of at least $5,000 or dropping out of the Auction.  Once a Bidder drops out of the Auction, the Bidder will no longer be permitted to participate in the Auction.  After Bidder number 2 either submits a qualifying overbid or drops out of the Auction, the bidding will then pass to Bidder number 3.  This process will continue until only two Qualified Bidders are left for all or each subset of the Assets, in which case the Qualified Bidder who submits the highest Qualified Bid will be deemed the Winning Bidder at the Auction, and the Qualified Bidder who submits the second highest Qualified Bid will be deemed the Winning Back-Up Bidder at the Auction.

Except as expressly provided in the Bidding Procedures Order or the provisions of these Bidding Procedures, the Debtor and Sherwood shall have the right to conduct the Auction in the manner they reasonably determine, in the exercise of their business judgment, to be in the best interests of the Debtor's bankruptcy estate.  The Debtor and Sherwood shall also have the right to

deviate from these Bidding Procedures without the need for any further order of the Bankruptcy Court if they reasonably determine, in the exercise of their business judgment, that doing so would be in the best interests of the Debtor's bankruptcy estate and is not inconsistent with any of the provisions of the Bankruptcy Code or any previously entered order of the Bankruptcy Court including the Bidding Procedures Order.

Sherwood and LNBYG, in consultation with the Debtor, may (1) determine which Qualified Bid, if any, is the highest, best and otherwise financially superior offer and (2) reject at any time any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures, or (iii) contrary to the best interests of the Debtor or its bankruptcy estate; _provided_ that, the highest, best, and otherwise financially superior offer shall be the Qualified Bid at the Auction reasonably expected to result in the highest amount of money being paid to the Debtor for their purchase of the Assets.

### **Special Rules Applicable to City National Bank and Parker Station Inc.**

City National Bank ("CNB") and Parker Station, Inc. ("PSI") each assert liens on some or all of the Debtor's Assets.

Pursuant to Bankruptcy Code section 363(k), CNB shall have the right to credit bid all or any portion of CNB's allowed secured claim (comprised of principal plus interest plus reasonable attorneys' fees less payments made by Debtor).  CNB shall be deemed a Qualified Bidder, and any Bid submitted by CNB shall be deemed a Qualified Bid.  CNB shall not be obligated to submit a Deposit with its Bid.  CNB shall have the right to credit bid even if it does not bid in earlier rounds.  Other than the foregoing, including to the extent CNB makes a Bid that exceeds any allowed secured claim that CNB holds, CNB shall be bound by all other terms of the Bidding Procedures.

13

Pursuant to Bankruptcy Code section 363(k), PSI shall have the right to credit bid all or any portion of PSI's allowed secured claim (less payments made by the Debtor) only in regard to bidding on the Parker Station wines, brand and intellectual property (the "<u>PSI Assets</u>").  PSI shall be deemed a Qualified Bidder for the PSI Assets, and any bid submitted by PSI on the PSI Assets shall be deemed a Qualified Bid for such PSI Assets.  PSI shall not be obligated to submit a Deposit with its Bid.  PSI shall have the right to credit bid on the PSI Assets even if it does not bid in earlier rounds for such assets.  Other than the foregoing, including to the extent PSI makes a Bid on the PSI Assets that exceeds any allowed secured claim that PSI holds, PSI shall be bound by all other terms of the Bidding Procedures

### <u>Selection of the Winning Bid and Winning Back-Up Bid</u>

The Auction shall continue until there is one Qualified Bid for all of the Assets or for any subset of the Assets that Sherwood and LNBYG, in consultation with the Debtor, determine, subject to Bankruptcy Court approval at the Sale Hearing, to be the highest and best bid (the "<u>Winning Bid</u>"), and another Qualified Bid to be the second highest and best bid (the "<u>Winning Back-Up Bid</u>"), at which point the Auction will be deemed concluded.  The Debtor will not consider any Bids submitted after the conclusion of the Auction.

Subject to the Bankruptcy Court approving the Winning Bid(s) at the Sale Hearing and entering the Sale Order approving of the Debtor's free and clear sale of the Assets to the Winning Bidder(s), the Winning Bidder(s) shall be requiring to close their purchase of the Assets by **October 17, 2022** (unless the Debtor and the Winning Bidder jointly agree to an extension of this outside Sale closing date which will be in their sole and absolute discretion), or the Winning Bidder(s) will be deemed to have forfeited their Deposit to the Debtor.  Promptly following the

14

closing of the Sale to the Winning Bidder, LNBYG shall return the Deposit of the Winning Back-Up Bidder to the Winning Back-Up Bidder.

If the Winning Bidder(s) fail to close their purchase by **October 17, 2022**, unless the Debtor and the Winning Bidder mutually agree in their sole and absolute discretion to extend the closing date, Sherwood shall so notify the Winning Back-Up Bidder. The Winning Back-Up Bidder will then have ten (10) days following the date of having been notified by Sherwood to close the Sale. If the Winning Back-Up Bidder fails to close the Sale within this time period, unless the Debtor and the Winning Back-Up Bidder mutually agree in their sole and absolute discretion to extend the closing date, the Winning Back-Up Bidder will be deemed to have forfeited its Deposit to the Debtor.

### Return of Deposits Following the Completion of the Auction

Promptly following the completion of the Auction, LNBYG will return the Deposits of all Bidders except for the Deposits of the Winning Bidder and the Winning Back-Up Bidder.

### Sale Hearing

The Sale Hearing for the Bankruptcy Court to approve the outcome of the Auction and the Debtor's sale of the Assets to the Winning Bidder(s) and to the Winning Back-Up Bidder(s) if the Winning Bidder(s) fail to close timely shall be held on **October 13, 2022, at 2:00 p.m., or at such other date and time set by the Bankruptcy Cour**t.

### Conduct of Sale Hearing

Because of the COVID-19 pandemic, the Bankruptcy Court will conduct the Sale Hearing using ZoomGov audio and video technology. Participants and members of the public may participate in and/or observe the Sale Hearing using ZoomGov, free of charge. Individuals may connect by ZoomGov audio and video using a personal computer (equipped with camera,

15

microphone and speaker), or a handheld mobile device with an integrated camera, microphone and speaker (such as an iPhone, iPad, Android phone or Android tablet). The connection can be initiated by entering the "Meeting URL" into a web browser on any of these devices, provided the device is connected to the Internet. Individuals connecting in this manner will be prompted for the Meeting ID and Password. Individuals may also connect to the Sale Hearing by telephone only. Individuals connecting to the Sale Hearing by telephone will also be prompted for the Meeting ID and Password. Neither a Zoom nor a ZoomGov account is necessary to participate in or observe the Sale Hearing, and no pre-registration is required. The Zoom information will be provided to parties in interest prior to the Sale Hearing. More information on appearing before the Bankruptcy Court by ZoomGov is available in the "Notice of Audio and Video Procedures for Judge Victoria S. Kaufman's Cases" on the Bankruptcy Court's website at https://www.cacb.uscourts.gov/judges/honorable-victoria-s-kaufman under the "Phone/Video Appearances" section.

### Audio Recording

The audio portion of the Sale Hearing will be recorded electronically by the Bankruptcy Court and constitute its official record. All persons are strictly prohibited from making any other recording of court proceedings, whether by video, audio, "screenshot," or otherwise. Violation of this prohibition may result in the imposition of monetary and non-monetary sanctions.

### Option of Early Acceptance of Bids

In the event that Sherwood receives any bid for any of the Assets prior to the various deadlines established above that Sherwood, in consultation with the Debtor, believes justify immediate acceptance rather than waiting for the Auction, the Debtor will proceed with the following protocol:

- The Debtor will file a notice with the Court identifying the Assets that were bid upon, the proposed purchase price, the anticipated closing date, and a short statement as to why Sherwood, in consultation with the Debtor, believes that acceptance of the offer prior to the various deadlines established above is in the best interests of the Debtor's estate.

- Creditors will have five days following the filing of any such notice to file an objection with the Court.

- If no timely objection is filed, the Debtor will file a proposed order with the Court providing for such sale of the Assets to the proposed buyer free and clear of all liens, claims and interests, and Sherwood will proceed to consummate that sale and issue the bill of sale to the proposed buyer following receipt of the buyer's purchase price.

- As with all sales of the Assets, the net sale proceeds (after Sherwood has been paid its 9% commission) will be deposited into a trust account maintained by LNBYG and will not be disbursed except in accordance with a further order of the Court.

- If a timely objection is filed, Sherwood will not proceed to consummate that sale unless the proposed sale of Assets is approved by the Court pursuant to an entered order of the Court.

17

**EXHIBIT "1"**

**ASSETS OFFERED FOR SALE**

[The Debtor's inventory has some turnover as wine is purchased and sold in the ordinary course

of the Debtor's business.  Therefore, as the inventory list is updated, the most current version of

the inventory list will be made available to prospective Bidders via the data room for the

Auction.]

**Brands and related intellectual property:**

| Serial Number | Reg. Number | Word Mark | Check Status | Live/Dead | Class(es) |
|---|---|---|---|---|---|
| 88393698 | | LUCAS & SOPHIE | TSDR | LIVE | |
| 87479043 | 5546992 | THE PEDALER | TSDR | LIVE | 033 |
| 87159125 | 5387645 | BACON | TSDR | LIVE | 033 |
| 86141321 | 4736190 | BLACK INK | TSDR | LIVE | |
| 77304559 | 3805208 | PARKER STATION | TSDR | LIVE | |
| 77045650 | 3362968 | NOBILISSIMA | TSDR | LIVE | 033 |

**Inventory – See Exhibit 1.a**

18

# EXHIBIT "1.a"

## Guarachi Wine Partners Inventory Summary                    8/26/2022

| Ref Number | Name | Size | Bottle/Case | # Cases |
|---|---|---|---|---|
| 12554 | Baigorri Blanco 2017 | 750ML | 12 | 6 |
| 12552 | Baigorri Crianza 2015 | 750ML | 12 | 10 |
| 12772 | Baigorri Garnacha 2015 | 750ML | 12 | 4 |
| 12775 | Baigorri Mendi 2016 | 750ML | 12 | 5 |
| 12776 | Baigorri Vino de Garage 2015 | 750ML | 6 | 7 |
| 12529 | Black Ink Red Blend 2016 | 750ML | 12 | 4 |
| 12428 | Castillo de Monseran Evil Eye 2015 | 750ML | 12 | 22 |
| 12810 | Castillo De Monseran Garnacha 2019 - Cardboard | 750ML | 12 | 651 |
| 12811 | Castillo De Monseran Garnacha 2019 - Wood Box | 750ML | 12 | 4 |
| 12896 | Castillo De Monseran Garnacha 2020 - Cardboard | 750ML | 12 | 336 |
| 12895 | Castillo De Monseran Garnacha 2020 - Wood Box | 750ML | 12 | 533 |
| 12331 | Deor Gold Sparkling | 750ML | 12 | 1 |
| 12508 | Gran Sello Sparkling Cava Brut NV | 750ML | 12 | 55 |
| 12510 | Gran Sello Sparkling Cava Rose NV | 750ML | 12 | 326 |
| 11339 | Guarachi Cabernet Heritage Las Piedras 2010 | 750ML | 6 | 8 |
| 11340 | Guarachi Cabernet Heritage Las Piedras 2010 - 1.5L | 1.5L | 6 | 4 |
| 12496 | Guarachi Cabernet Heritage Las Piedras 2010 - Cardboard | 750ML | 6 | 16 |
| 11591 | Guarachi Cabernet Heritage Las Piedras 2011 - Wood | 750ML | 6 | 8 |
| 11687 | Guarachi Cabernet Heritage Las Piedras 2012 | 750ML | 6 | 10 |
| 11692 | Guarachi Cabernet Heritage Las Piedras 2012 - 1.5L | 1.5L | 6 | 10 |
| 11700 | Guarachi Cabernet Heritage Las Piedras 2012 - 12pk | 750ML | 12 | 3 |
| 11949 | Guarachi Cabernet Heritage Las Piedras 2013 - 1.5L | 1.5L | 6 | 4 |
| 11945 | Guarachi Cabernet Heritage Las Piedras 2013 - Wood | 750ML | 6 | 10 |
| 12189 | Guarachi Cabernet Heritage Las Piedras 2013 Cardboard | 750ML | 6 | 8 |
| 12219 | Guarachi Cabernet Heritage Las Piedras 2014 - 1.5L | 1.5L | 6 | 5 |
| 12325 | Guarachi Cabernet Heritage Las Piedras 2014 - Cardboard | 750ML | 6 | 10 |
| 12421 | Guarachi Cabernet Heritage Las Piedras 2015 - 1.5L | 1.5L | 6 | 10 |
| 12727 | Guarachi Chardonnay Sun Chase 2018 | 750ML | 6 | 4 |
| 12831 | Guarachi Chardonnay Sun Chase 2019 | 750ML | 6 | 30 |
| 12737 | Guarachi Fern Creek Pinot Noir 2018 | 750ML | 6 | 42 |
| 12829 | Guarachi Fern Creek Pinot Noir 2019 | 750ML | 6 | 174 |
| 12365 | Guarachi G Red Blend 2014 | 750ML | 12 | 2 |
| 12385 | Guarachi G Red Blend 2016 | 750ML | 6 | 17 |
| 12606 | Guarachi G Red Blend 2016 - Unlabeled | 750ML | 6 | 9 |
| 12825 | Guarachi G Red Blend 2018 | 750ML | 6 | 2 |
| 10854 | Guarachi Napa Valley Cabernet Sauvignon 2008 | 750ML | 6 | 3 |
| 11344 | Guarachi Napa Valley Cabernet Sauvignon 2010 1.5L | 1.5L | 6 | 2 |
| 11507 | Guarachi Napa Valley Cabernet Sauvignon 2011 | 750ML | 6 | 9 |
| 11508 | Guarachi Napa Valley Cabernet Sauvignon 2011 - 1.5L | 1.5L | 6 | 3 |
| 11686 | Guarachi Napa Valley Cabernet Sauvignon 2012 | 750ML | 6 | 9 |
| 11691 | Guarachi Napa Valley Cabernet Sauvignon 2012 - 1.5L | 1.5L | 6 | 7 |
| 11943 | Guarachi Napa Valley Cabernet Sauvignon 2013 | 750ML | 6 | 9 |
| 11947 | Guarachi Napa Valley Cabernet Sauvignon 2013 - 1.5L | 1.5L | 6 | 9 |
| 12211 | Guarachi Napa Valley Cabernet Sauvignon 2014 | 750ML | 6 | 3 |
| 12214 | Guarachi Napa Valley Cabernet Sauvignon 2014 - 1.5L | 1.5L | 6 | 5 |
| 12384 | Guarachi Napa Valley Cabernet Sauvignon 2015 | 750ML | 6 | 5 |
| 12420 | Guarachi Napa Valley Cabernet Sauvignon 2015 - 1.5L | 1.5L | 6 | 6 |
| 12559 | Guarachi Napa Valley Cabernet Sauvignon 2016 | 750ML | 6 | 17 |
| 12732 | Guarachi Napa Valley Cabernet Sauvignon 2017 | 750ML | 6 | 11 |
| 12827 | Guarachi Napa Valley Cabernet Sauvignon 2018 | 750ML | 6 | 87 |
| 12879 | Guarachi Napa Valley Cabernet Sauvignon 2019 | 750ML | 6 | 28 |
| 11341 | Guarachi Pinot Noir Gap's Crown 2011 | 750ML | 6 | 36 |
| 11342 | Guarachi Pinot Noir Gap's Crown 2011 - 1.5L | 1.5L | 6 | 4 |
| 11513 | Guarachi Pinot Noir Gap's Crown 2012 | 750ML | 6 | 33 |
| 11514 | Guarachi Pinot Noir Gap's Crown 2012 - 1.5L | 1.5L | 6 | 4 |

| Ref Number | Name | Size | Bottle/Case | # Cases |
|---|---|---|---|---|
| 11688 | Guarachi Pinot Noir Gap's Crown 2013 | 750ML | 6 | 51 |
| 11689 | Guarachi Pinot Noir Gap's Crown 2013 - 1.5L | 1.5L | 6 | 8 |
| 11944 | Guarachi Pinot Noir Gap's Crown 2014 | 750ML | 6 | 20 |
| 11948 | Guarachi Pinot Noir Gap's Crown 2014 - 1.5L | 1.5L | 6 | 2 |
| 12246 | Guarachi Pinot Noir Gap's Crown 2015 | 750ML | 6 | 11 |
| 12249 | Guarachi Pinot Noir Gap's Crown 2015 - 1.5L | 1.5L | 6 | 5 |
| 12388 | Guarachi Pinot Noir Gap's Crown 2016 | 750ML | 6 | 1 |
| 12444 | Guarachi Pinot Noir Gap's Crown 2016 - 1.5L | 1.5L | 6 | 10 |
| 10499 | Guarachi Pinot Noir Sonoma Coast 2008 | 750ML | 6 | 14 |
| 10857 | Guarachi Pinot Noir Sonoma Coast 2009 | 750ML | 6 | 39 |
| 11100 | Guarachi Pinot Noir Sonoma Coast 2010 | 750ML | 6 | 32 |
| 11103 | Guarachi Pinot Noir Sonoma Coast 2010 1.5L | 1.5L | 6 | 6 |
| 11345 | Guarachi Pinot Noir Sonoma Coast 2011 | 750ML | 6 | 48 |
| 11346 | Guarachi Pinot Noir Sonoma Coast 2011 1.5L | 1.5L | 6 | 4 |
| 11511 | Guarachi Pinot Noir Sonoma Coast 2012 | 750ML | 6 | 50 |
| 11512 | Guarachi Pinot Noir Sonoma Coast 2012 1.5L | 1.5L | 6 | 2 |
| 12003 | Guarachi Pinot Noir Sonoma Coast 2014 | 750ML | 6 | 3 |
| 12002 | Guarachi Pinot Noir Sonoma Coast 2014 1.5L | 1.5L | 6 | 1 |
| 12248 | Guarachi Pinot Noir Sonoma Coast 2015 | 750ML | 6 | 3 |
| 12251 | Guarachi Pinot Noir Sonoma Coast 2015 1.5L | 1.5L | 6 | 5 |
| 12389 | Guarachi Pinot Noir Sonoma Coast 2016 | 750ML | 6 | 3 |
| 12443 | Guarachi Pinot Noir Sonoma Coast 2016 1.5L | 1.5L | 6 | 5 |
| 12458 | Guarachi Pinot Noir Sonoma Coast 2016 1.5L - Unlabeled | 1.5L | 6 | 2 |
| 12560 | Guarachi Pinot Noir Sonoma Coast 2017 | 750ML | 6 | 8 |
| 11694 | Guarachi Pinot Noir Sun Chase 2013 | 750ML | 6 | 18 |
| 11690 | Guarachi Pinot Noir Sun Chase 2013 1.5L | 1.5L | 6 | 9 |
| 11941 | Guarachi Pinot Noir Sun Chase 2014 | 750ML | 6 | 15 |
| 11946 | Guarachi Pinot Noir Sun Chase 2014 - 1.5L | 1.5L | 6 | 2 |
| 12247 | Guarachi Pinot Noir Sun Chase 2015 | 750ML | 6 | 3 |
| 12250 | Guarachi Pinot Noir Sun Chase 2015 - 1.5L | 1.5L | 6 | 5 |
| 12442 | Guarachi Pinot Noir Sun Chase 2016 - 1.5L | 1.5L | 6 | 10 |
| 12440 | Guarachi Pinot Noir Sun Chase 2017 | 750ML | 6 | 13 |
| 12595 | Guarachi Pinot Noir Sun Chase 2017 - 1.5L | 1.5L | 6 | 5 |
| 12728 | Guarachi Pinot Noir Sun Chase 2018 | 750ML | 6 | 173 |
| 12830 | Guarachi Pinot Noir Sun Chase 2019 | 750ML | 6 | 637 |
| 12495 | Guarachi Pinot Noir Sun Chase Vertical - Costco | 750ML | 6 | 19 |
| 12327 | Guarachi To Kalon Cabernet Sauvignon 2014 | 750ML | 6 | 1 |
| 12216 | Guarachi To Kalon Cabernet Sauvignon 2014 - 1.5L | 1.5L | 6 | 5 |
| 12459 | Guarachi To Kalon Cabernet Sauvignon 2015 | 750ML | 6 | 14 |
| 12422 | Guarachi To Kalon Cabernet Sauvignon 2015 - 1.5L | 1.5L | 6 | 5 |
| 12600 | Guarachi To Kalon Cabernet Sauvignon 2016 | 750ML | 6 | 5 |
| 12823 | Guarachi To Kalon Cabernet Sauvignon 2018 | 750ML | 6 | 53 |
| 12864 | Kidia Carmenere 2020 | 750ML | 12 | 16 |
| 12816 | Kidia Sauvignon Blanc 2020 | 750ML | 12 | 46 |
| 12876 | La Maldita Revolucion 2019 | 750ML | 12 | 182 |
| 11740 | Lea Bouna Terra Pinot Noir 2013 | 750ML | 12 | 5 |
| 11738 | Lea Mormann Vineyard Chardonnay 2013 | 750ML | 12 | 17 |
| 12380 | Lea Mormann Vineyard Chardonnay 2014 | 750ML | 12 | 7 |
| 12103 | Lea Santa Rita Hills Pinot Noir 2014 | 750ML | 12 | 19 |
| 12889 | Majuelos Ribera Del Duero 2018 | 750ML | 12 | 460 |
| 12878 | Manadero Garnacha 2018 | 750ML | 12 | 914 |
| 12487 | Montes Alpha Cabernet Sauvignon 2015 | 750ML | 12 | 2 |
| 11361 | Montes Star Angel Aurelio's Selection 2008 | 750ML | 6 | 49 |
| 11566 | Montes Star Angel Pinot Noir 2011 | 750ML | 12 | 10 |
| 11685 | Montes Star Angel Syrah 2009 | 750ML | 12 | 5 |
| 12669 | Montgras Antu Cabernet-Carmenere 2017 | 750ML | 12 | 90 |

| Ref Number | Name | Size | Bottle/Case | # Cases |
|---|---|---|---|---|
| 12761 | Montgras Antu Chardonnay 2018 | 750ML | 12 | 23 |
| 12713 | Montgras Early Harvest Rose 2019 | 750ML | 12 | 76 |
| 12647 | Montgras Intriga Cab Wood Case 2012 | 750ML | 6 | 9 |
| 12648 | Montgras Intriga Maxima 2013 | 750ML | 6 | 24 |
| 12646 | Montgras Ninquen 2012 | 750ML | 6 | 1 |
| 12769 | Montgras Quatro White 2018 | 750ML | 12 | 7 |
| 12660 | Montgras Reserva Cabernet Sauvignon 2015 | 750ML | 12 | 3 |
| 12662 | Montgras Reserva Cabernet Sauvignon 2017 | 750ML | 12 | 2 |
| 12817 | Montgras Reserva Cabernet Sauvignon 2019 | 750ML | 12 | 14 |
| 12682 | Montgras Reserva Chardonnay 2018 | 750ML | 12 | 15 |
| 12626 | Montgras Reserva Syrah 2018 | 750ML | 12 | 55 |
| 12894 | Montgras Reserve Pinot Noir 2016 | 750ML | 12 | 2 |
| 12715 | Nobilissima Prosecco DOC | 750ML | 12 | 395 |
| 12699 | Parker Station Cabernet Sauvignon 2017 | 750ML | 12 | 711 |
| 12698 | Parker Station Chardonnay 2018 | 750ML | 12 | 1,368 |
| 12815 | Parker Station Pinot Noir 2019 | 750ML | 12 | 1,879 |
| 12718 | Surf Swim Chardonnay 2018 | 750ML | 12 | 1 |
| 12853 | Tenshen Chardonnay 2019 | 750ML | 12 | 252 |
| 11743 | Tenshen Rhone Red Blend 2013 | 750ML | 12 | 5 |
| 12222 | Tenshen Rhone Red Blend 2015 | 750ML | 12 | 2 |
| 12565 | Tenshen Rhone Red Blend 2017 | 750ML | 12 | 1 |
| 12821 | Tenshen Rhone Red Blend 2019 | 750ML | 12 | 1 |
| 12885 | Tenshen Rhone Red Blend 2020 | 750ML | 12 | 2,184 |
| 12518 | tenshen Rose 17 | 750ML | 12 | 2 |
| 11915 | Tenshen White Blend 2014 | 750ML | 12 | 5 |
| 12156 | Tenshen White Blend 2015 | 750ML | 12 | 4 |
| 12312 | Tenshen White Blend 2016 | 750ML | 12 | 2 |
| 12515 | Tenshen White Blend 2017 | 750ML | 12 | 101 |
| 12886 | Tenshen White Blend 2020 | 750ML | 12 | 943 |
| 12863 | The Pedaler Cabernet Sauvignon 2019 | 1.5L | 6 | 198 |
| 12491 | The Pedaler Merlot 2016 | 1.5L | 6 | 55 |
| 12856 | The Pedaler Merlot 2019 | 1.5L | 6 | 251 |
| 12834 | UNCORKED by Cosmopolitan Cabernet Sauvignon 2018 | 750ML | 12 | 2,454 |
| 12875 | UNCORKED by Cosmopolitan Cabernet Sauvignon 2019 | 750ML | 12 | 2,535 |
| 12837 | UNCORKED by Cosmopolitan Chard 2019 13.5% | 750ML | 12 | 2 |
| 12898 | UNCORKED by Cosmopolitan Chard 2019 14.1% | 750ML | 12 | 1 |
| 12852 | UNCORKED by Cosmopolitan Pinot Grigio 2019 | 750ML | 12 | 1,613 |
| 12836 | UNCORKED by Cosmopolitan Pinot Noir 2019 | 750ML | 12 | 6,114 |
| 12835 | UNCORKED by Cosmopolitan Rose 2019 | 750ML | 12 | 406 |
| 12850 | UNCORKED by Cosmopolitan Rose 2020 | 750ML | 12 | 2,267 |
| 12892 | VIK La Piu Belle 2019 | 750ML | 6 | 5 |
| 12869 | VIK La Piu Belle Rose 2021 | 750ML | 6 | 5 |
| 12868 | VIK Milla Cala 2018 | 750ML | 12 | 4 |
| 12789 | Vivanco Coleccion 4 Varietals Red 2016 | 750ML | 6 | 7 |
| 12790 | Vivanco Coleccion 4 Varietals Red 2016 | 750ML | 6 | 38 |
| 12848 | Vivanco Coleccion 4 Varietals Red 2017 | 750ML | 6 | 56 |
| 12792 | Vivanco Coleccion Parcelas de Garnacha 2016 | 750ML | 6 | 70 |
| 12795 | Vivanco Coleccion Parcelas de Graciano 2016 | 750ML | 6 | 11 |
| 12794 | Vivanco Coleccion Parcelas de Maturana 2017 | 750ML | 6 | 12 |
| 12908 | Vivanco Crianza 2018 | 750ML | 12 | 72 |
| 12785 | Vivanco La Maldita Red 2018 | 750ML | 12 | 3 |
| 12846 | Vivanco La Maldita Red 2019 | 750ML | 12 | 284 |
| 12845 | Vivanco La Maldita Revolucion 2018 | 750ML | 12 | 3 |
| 12797 | Vivanco La Maldita Rose 2019 | 750ML | 12 | 33 |
| 12798 | Vivanco La Maldita White 2019 | 750ML | 12 | 124 |
| 12902 | Vivanco La Maldita White 2020 | 750ML | 12 | 10 |

| Ref Number | Name | Size | Bottle/Case | # Cases |
|---|---|---|---|---|
| 12793 | Vivanco Parcelas de Mazuelo 2017 | 750ML | 6 | 15 |
| 12782 | Vivanco Reserva 2014 | 750ML | 12 | 36 |
| 12847 | Vivanco Rose 2019 | 750ML | 12 | 94 |
| 12799 | Vivanco White 2019 | 750ML | 12 | 2 |
| | **Total Cases** | | | **30,654** |

**EXHIBIT "2"**

**BID PROCEDURES ORDER**

RON BENDER (State Bar No. 143364)
TODD M. ARNOLD (State Bar No. 221868)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyg.com; tma@lnbyg.com

Attorneys for Debtor and Debtor in Possession

FILED & ENTERED

AUG 22 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Pgarcia    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | Case No.: 1:22-bk-10545-VK |
| GUARACHI WINE PARTNERS INC., a California corporation, | Chapter 11 Case |
| Debtor and Debtor in Possession. | Subchapter V |

**ORDER GRANTING DEBTOR'S MOTION TO: (1) APPROVE AUCTION AND BID PROCEDURES FOR THE SALE OF ASSETS AND (2) SET SCHEDULING FOR A MOTION TO APPROVE THE SALE OF ASSETS**

**Hearing:**
Date:    August 18, 2022
Time:    2:00 p.m.
Place:   Courtroom 301
         21041 Burbank Boulevard
         Woodland Hills, CA 91367
         **VIA ZOOMGOV**

A hearing was scheduled at the above-referenced date, time, and location for the Court to consider the *Motion To: (1) Approve Auction And Bid Procedures For The Sale Of Assets And (2) Set Scheduling For A Motion To Approve The Sale Of Assets* (the "Motion") [Dkt. 125][1] filed by Guarachi Wine Partners Inc., the Chapter 11 debtor and debtor in possession herein (the "Debtor"). Appearances were excused, but any appearances that were made were set forth on the record of the Court.

The Court, having considered the Motion and all of the pleadings filed by the Debtor in support of the Motion, any statements, arguments, and representations at the hearing on the Motion, and that no opposition to the Motion was filed, and for good cause appearing,

**HEREBY FINDS, ORDERS AS FOLLOWS:**

(1)     The Motion is hereby granted except that the Debtor agrees that all of the net sale proceeds from the Auction will be held by the Debtor in its debtor-in-possession account and not spent except in accordance with further order of the Court.

(2)     The Bid Procedures attached to the Motion as Exhibit "A" and the Sale Motion Scheduling set forth in the Motion, which include the following key dates, are hereby approved:

| | |
|---|---|
| September 29, 2022 at 5:00 p.m. (prevailing Pacific time) | Initial Bid Deadline |
| October 6, 2022 at 10 a.m. (prevailing Pacific time) | Auction to be held at the offices of Levene, Neale, Bender, Yoo & Golubchik L.L.P., which are located at 2818 La Cienega Avenue, Los Angeles, California 90034, or via Zoom with all Qualified Bidders to be provided with particulars in advance of the Auction. |
| October 10, 2022, at 9:00 a.m. (prevailing Pacific time) | Deadline for the Debtor to file and serve motion to approve the sale of the Assets (the "Sale Motion"). |
| October 12, 2022, at 2:00 p.m. (prevailing Pacific time) | Deadline for any parties in interest to file and serve any oppositions ("Oppositions") to the Sale Motion. |
| October 13, 2022 at 2:00 p.m. (prevailing Pacific time) | Sale Hearing to be conducted before the Bankruptcy Court on the Sale Motion and |

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

| | deadline for replies to any Oppositions to the Sale Motion, which replies may be made orally at the Sale Hearing. |
|---|---|
| October 17, 2022 | Outside date by when the winning bidder(s) at the Auction are required to close their purchase of the Assets unless the winning bidder(s) and the Debtor jointly agree to extend the outside closing date |

**IT IS SO ORDERED.**

### 

Date: August 22, 2022

Victoria S. Kaufman
United States Bankruptcy Judge

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, California 90034

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S MOTION FOR AN ORDER: (1) APPROVING SALE OF CERTAIN ESTATE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (2) APPROVING THE STIPULATION PROVIDING FOR PAYMENT IN FULL OF OUTSTANDING SECURED DEBT OWING TO CITY NATIONAL BANK, N.A.; (3) WAIVING THE 14-DAY STAY PERIOD OF BANKRUPTCY RULE 6004(h); AND (4) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **October 10, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M Arnold     tma@lnbyg.com
- William C Beall     will@beallandburkhardt.com, carissa@beallandburkhardt.com
- Ron Bender     rb@lnbyg.com
- Katherine Bunker     kate.bunker@usdoj.gov
- Moriah Douglas Flahaut (TR)     douglas.flahaut@arentfox.com, C194@ecfcbis.com
- Richard H Golubow     rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- Lance N Jurich     ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com
- Shane J Moses     smoses@foley.com, llanglois@foley.com;lanii-langlois-4514@ecf.pacerpro.com;swells@foley.com
- Eric A. Nyberg     e.nyberg@kornfieldlaw.com
- James V. Sansone     jsansone@cmprlaw.com, dmarshall@cmprlaw.com
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

**2.   SERVED BY UNITED STATES MAIL**: On (*date*) **October 10, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

None.

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) **October 10, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**VIA OVERNIGHT MAIL**
Honorable Victoria S. Kaufman
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 354 / Courtroom 301
Woodland Hills, CA 91367

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 10, 2022 | Todd M. Arnold | /s/ Todd M. Arnold |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

In re Guarachi Wine Partners
RSN and 20 Largest
File No. 9722

Debtor
Guarachi Wine Partners Inc.
27001 Agoura Rd.
Suite 285
Calabasas, CA 91301

Katherine Bunker
Office of the U.S. Trustee
915 Wilshire Blvd., Ste. 1850
Los Angeles, CA 90017

Counsel for Miller Family Wine Co.
John H. Haan, Jr. / Nathan C. Rogers
Rogers, Sheffield & Campbell, LLP
427 East Carrillo Street
Santa Barbara, CA 93101

Counsel for Bodega Norton, S.A.
David M. Jolley / Kathleen B. Friend
Donahue Fitzgerald LLP
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520

Trustee
Moriah Douglas Flahaut (TR)
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013

20 Largest

Agricola San Jose De Peralillo S.A.
Rut.96.655.110-0
Santiago
Chile

Albatrans, Inc.
149-10 183rd Street
Jamaica, NY 11413

Biagi Bros., Inc.
Attn: Neil Lawrence
787 Airpark Road
Napa, CA 94558

Allied Beverage Group LLC
700 Kapkowski Road
Elizabeth, NJ 07201

Araex Rioja Alavesa, SL
Attn: Javier R. de Galarreta
C/ Ramon y Cajal 7, 1 A
Vitoria
Spain 1007

Bodegas Vivanco SL
Attn: Luis Mendi
Ctra. N-232, 26330, Briones
La Rioja
Spain

Breakthru Beverage Group- Florida
Attn: Robert Leon
500 East Broward Blvd.
Fort Lauderdale, FL 33394

Bodega Norton, S.A.
Attn: Michael Halstrick
Ruta Provincial 15, km 23.5
Mendoza
Chile

City National Bank
Credit Card Processing Center
Pasadena, CA 91199-1355

Kaiken S.A.
Saenz Pena 5516
Mendoza
Argentina CP5509

Cantina Montelliana
e dei Colli Asolani
Via Caonada, 1, 31044
Montebelluna TV, Italy

Jackson Lewis P.C.
P.O. Box 416019
Boston, MA 02241-6019

Miller Family Wine Company, LLC
Attn: Nicholas Miller
132 E. Cabrillo St.
Santa Barbara, CA 93101

ITN Consolidators,Inc.
P.O. Box 931423
Atlanta, GA 31193-1423

MHW  Ltd./ Christiania
1129 Northern Blvd.
Manhasset, NY 11030

Parker Station, Inc.
Attn: Timothy Snider
PO Box 908
Los Olivos, CA 93441

Majuelos Iberia, S.L.
Attn: Javier Delgado
Calle Urgabona, 32
Venturada Madrid
Spain,  28729

O'Neill Beverages Co. LLC
Attn: Jeffrey O'Neill
8418 S. Lac Jac
Parlier, CA 93648

Vina VIK SPA
Avenida Alonso de Cordova 5320
Las Condes-Santiago
Chile

Small Business Administration
Attn: So Cal Legal Unit
330 N. Brand Blvd., Ste 1200
Glendale, CA 91203-2304